775 So.2d 909 (2000)
Guillermo Octavio ARBELAEZ, Appellant,
v.
STATE of Florida, Appellee.
No. SC89375.
Supreme Court of Florida.
July 13, 2000.
Rehearings Denied October 19, 2000 and January 19, 2001.
*911 Todd G. Scher, Litigation Director, Office of the Capital Collateral Regional CounselSouthern Region, Fort Lauderdale, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and David M. Schultz, Assistant Attorney General, West Palm Beach, Florida, for Appellee.
PER CURIAM.
Guillermo Octavio Arbelaez, a prisoner under sentence of death, appeals the trial court's order summarily denying him relief on his motion to vacate judgment of conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we remand this matter to the trial court for an evidentiary hearing on the claim of ineffective assistance of counsel during the penalty phase proceedings.
Arbelaez was convicted of first-degree murder and kidnaping in the death of the five-year-old son of his former girlfriend. The child died after being thrown off a bridge into the water seventy feet below. The cause of death was asphyxia resulting from both strangulation and drowning. *912 The jury recommended a sentence of death by a vote of eleven to one. The court found three aggravating factors (the murder was cold, calculated, and premeditated (CCP); the murder was heinous, atrocious, or cruel (HAC); and the murder was committed during a kidnapping), one statutory mitigating factor (Arbelaez had no significant prior criminal history), and one nonstatutory mitigating factor (Arbelaez exhibited remorse). The trial court followed the jury's recommendation and sentenced Arbelaez to death. On appeal, this Court affirmed both the convictions and the death sentence. See Arbelaez v. State, 626 So.2d 169 (Fla.1993).
After the United States Supreme Court denied Arbelaez's petition for a writ of certiorari, he filed a motion for postconviction relief with the trial court in August 1995, raising a number of claims and requesting leave to amend his motion. He also filed public records requests with the State Attorney's Office, the Attorney General's Office, and the City of Miami Police Department. The trial court reserved ruling on Arbelaez's request to amend his motion until the public record documents were produced and reviewed by Arbelaez's attorney. In July 1996, Arbelaez filed an amended motion for postconviction relief, raising twenty-three claims, with numerous subclaims. He also filed a request for further leave to amend his motion. The trial court denied this request, stating that Arbelaez "has had ample time and opportunity to investigate the issues and has not demonstrated any grounds for any further amendments." The court also noted that Arbelaez took no action to obtain the public records he desired and did not schedule for hearing his Motion to Vacate Judgment and Sentence nor his Motion to Compel Production of Public Records until ordered by the court to do so. The court further noted that even after the records were produced and Arbelaez amended his postconviction motion, he raised no claims based upon the newly-obtained documents.
In a thirty-five page order, the trial court summarily denied all relief requested. Arbelaez appeals the denial to this Court and raises the following thirteen issues: (1) the trial court erred in summarily denying Arbelaez's 3.850 motion; (2) the court erred in denying of Arbelaez's motion to disqualify Judge Leslie Rothenberg; (3) the trial court erred in ordering that the files of Arbelaez's trial counsel be disclosed to the State; (4) the police department failed to provide all of the public records requested and the trial court erred in refusing to disclose various records of the state attorney's and attorney general's offices after an in-camera inspection; (5) the police officers exerted psychological coercion to lure Arbelaez back to the United States so that a confession could be obtained; (6) trial counsel was ineffective in permitting Juror Kelley to serve as an alternate juror when he had already struck this juror peremptorily; (7) the record on appeal was unreliable and counsel was ineffective for failing to raise the issue on appeal; (8) the prejudicial effect of gruesome photographs introduced into evidence outweighed their probative value; (9) trial counsel was ineffective for failing to object to various constitutional errors; (10) the one-year time limit imposed by Florida Rule of Criminal Procedure 3.851 for filing a motion for postconviction relief in a capital case is unconstitutional; (11) the death penalty is unconstitutional; (12) the death penalty is not appropriate under the circumstances of this case; and (13) trial counsel was prohibited from interviewing jurors to discover information that could warrant a new trial.
While we find no merit to most of claim one, we conclude that the trial court erred by failing to conduct an evidentiary hearing as to Arbelaez's claim that trial counsel was ineffective during the penalty phase of his trial for failing to present expert testimony as to his epilepsy and other mental health mitigation and for failing to introduce evidence of his family history of abuse. This case is very similar *913 to Ragsdale v. State, 720 So.2d 203 (Fla. 1998), in which this Court found that an evidentiary hearing was required on claims of ineffective assistance during the penalty phase. Arbelaez's postconviction motion included almost the same evidence of mitigation presented by Ragsdale. As in Ragsdale, Arbelaez contends that testimony was available to show that his life was marked by abuse and deprivation, that he suffered from a lifetime of drug abuse, and that he suffered from mental illness and epilepsy and tried repeatedly to commit suicide; yet no witnesses were called by trial counsel to present this testimony. Arbelaez further contends that trial counsel never had him examined by a competent mental health expert for purposes of presenting mitigation. He asserts that he has now been examined by mental health experts who have found that he suffers from organic brain damage and epilepsy; is mentally retarded; and has an IQ of 67.
In finding that an evidentiary hearing was not warranted on this issue, the trial court concluded that the issue was without merit because the record reflected that two mental health experts examined Arbelaez: Dr. Raul Lopez and Dr. A.M. Castiello. According to Arbelaez, however, Dr. Castiello was appointed solely for the purpose of determining his competency to stand trial and Dr. Lopez had treated him for epilepsy two years prior to the crime and could not provide any updated information on his condition. Most importantly, Arbelaez contends that no expert was appointed to evaluate him for the purposes of presenting mitigation.
Based upon similar claims, this Court concluded that the defendant in Ragsdale had stated sufficient allegations of mitigation to warrant an evidentiary hearing in order to determine whether counsel was ineffective in failing to properly investigate and present evidence in mitigation. See Ragsdale, 720 So.2d at 208. We find that a similar conclusion is warranted in this case as to the claims of ineffective assistance of counsel during the penalty phase.
Claim one also asserts that an evidentiary hearing was warranted as to Arbelaez's claim that trial counsel provided ineffective assistance during the guilt phase of his trial. Specifically, Arbelaez claims that counsel failed to: (1) present adequate evidence or expert testimony as to Arbelaez's epilepsy; (2) investigate and develop evidence that Arbelaez's low intelligence, epilepsy, and cultural differences prevented him from voluntarily waiving his Miranda[1] rights; and (3) voir dire the prospective jurors on the issue of mental illness negating the specific intent required for a finding of first-degree murder. We conclude that summary denial was appropriate as to each of these subclaims. See Roberts v. State, 568 So.2d 1255, 1259 (Fla. 1990) (stating that claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the defendant alleges "specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant").
On the epilepsy claim, the record shows that counsel presented evidence of Arbelaez's epileptic seizures through Arbelaez's own testimony and the testimony of two of his friends. The record further shows that counsel both investigated epilepsy as a defense to negate specific intent and argued its relevance to the trial court. Moreover, even if counsel had presented additional evidence of epilepsy, there is no reasonable probability that it would have changed the outcome of the guilt phase as Arbelaez never alleged that he had a seizure on the day of the crime. He maintained that the child accidentally fell from the bridge while Arbelaez was attending to car trouble. Thus, the record conclusively rebuts this claim.
We further agree with the trial court that Arbelaez was not entitled to an evidentiary hearing on his claim that trial *914 counsel rendered ineffective assistance as to the Miranda waiver issue. In summarily denying relief, the trial court noted the following: defense counsel did file a motion to suppress Arbelaez's statements and litigated the issue at a hearing; the claim of low intelligence was not supported by the record in that Arbelaez's conversations and statements to the police and his testimony at trial demonstrated that he had no difficulty assimilating information and that he clearly understood the rights he was waiving; and Arbelaez did not articulate why he was incapable of voluntarily waiving Miranda because he was from Colombia.[2] We note, moreover, that we previously determined that Arbelaez "voluntarily waived his constitutional rights." Arbelaez, 626 So.2d at 175. Thus, Arbelaez established neither deficient performance nor prejudice as required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Arbelaez also claims that counsel was ineffective for failing to question prospective jurors on their views about mental illness negating the specific intent required for a finding of first-degree murder. However, as discussed above, Arbelaez never claimed that he had a seizure during the crime. Thus, even if counsel were deficient in failing to ask voir dire questions on this issue, the failure to do so resulted in no prejudice to Arbelaez and no relief is warranted on this basis. See Strickland.
Claim one also asserts that summary denial was improper because the trial court erroneously concluded that the allegations in a rule 3.850 motion must be proved in and supported by affidavits. Under rule 3.850, a movant is entitled to an evidentiary hearing unless the motion and record conclusively show that the movant is entitled to no relief. Thus, the court must treat the allegations as true except to the extent they are rebutted conclusively by the record. See Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). Rule 3.850(c), which sets forth the contents of a 3.850 motion, requires a movant to include a brief statement of the facts (and other conditions) relied on in support of the motion. See Fla. R.Crim. P. 3.850(c)(6). However, nothing in the rule requires the movant to attach an affidavit or authorizes a trial court to deny the motion on the basis of a movant's failure to do so. See Valle, 705 So.2d at 1334.
The instant case is very similar to Valle, where the trial court summarily denied Valle's claim of ineffective assistance of counsel as legally insufficient. In that case, we noted that the record of the Huff[3] hearing transcript revealed that the court's true concern was that Valle had not submitted any affidavits to support his allegations of ineffective assistance of counsel. While the transcript in the instant case contains no explanation of the trial court's reasons for denying an evidentiary hearing, the order is quite detailed and does explain why each claim was denied. As to the claims of ineffective assistance of counsel at trial and sentencing, the order states that the claims are legally insufficient because they "are mere allegations unsupported by either Affidavit or the record." The order also states that the claims are legally insufficient because Arbelaez "failed to present any evidence that these claims are supported by any competent evidence or that there were witnesses who would have testified in support of these assertions had they been called upon by the Defendant to do so." On the claim that trial counsel failed to investigate and present mitigating evidence at the penalty phase, the order finds the claim to be unsubstantiated and legally insufficient because "there are no Affidavits by these `health professionals' [who examined Arbelaez postconviction] attached to the Defendant's Motion, and that no names were provided in the Defendant's Motion." *915 However, for the reasons noted above, we find that summary denial was only improper as to Arbelaez's claims of ineffective assistance of counsel during the penalty phase.
For remand purposes and to clarify this issue, we note the following distinction. Where a motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied. See Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998). However, the failure to attach affidavits should not be the basis for finding a rule 3.850 claim to be legally insufficient. See Valle, 705 So.2d at 1334.
Claim nine raises another issue as to the ineffective assistance of counsel. Arbelaez contends that trial counsel was ineffective for failing to raise the following objections: the instruction on murder in the commission of a felony acts as an automatic aggravating circumstance; the HAC and CCP instructions are unconstitutionally vague; the statutory language defining the HAC and CCP aggravating circumstances is unconstitutionally vague and overbroad; the trial court failed to consider epilepsy as a nonstatutory mitigating circumstance in violation of Lockett;[4] the jury's role in sentencing was minimized in violation of Caldwell;[5] and that the trial court and prosecutor shifted the burden to the defendant to prove that life was the appropriate penalty.
The trial court found each of these claims to be procedurally barred either because they were not raised at trial or on direct appeal or, in the case of not considering epilepsy as a nonstatutory mitigator, were raised and rejected on direct appeal. See Arbelaez, 626 So.2d at 178 ("[W]e find that the trial court properly rejected the assertion that Arbelaez's epilepsy was a mitigating circumstance."). Arbelaez may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel. See Valle, 705 So.2d at 1336 n. 6. Moreover, even if the merits of the claims had been cognizable in postconviction relief proceedings, no relief was warranted. This Court has rejected many of the issues raised in this claim. See Johnson v. State, 660 So.2d 637, 647 (Fla.1995) (finding no merit to claim that instruction on murder in the course of a felony acts as automatic aggravator); Klokoc v. State, 589 So.2d 219, 222 (Fla.1991) (rejecting claim that CCP factor in statute is unconstitutionally vague); Sochor v. State, 619 So.2d 285, 291 (Fla.1993) ("Florida's standard jury instructions fully advise the jury of the importance of its role and do not violate Caldwell"). Even if counsel were deficient for failing to object to the HAC and CCP instructions, there would be no prejudice under Strickland as the evidence presented at trial clearly established that both circumstances would be found to exist under the correct definition of these terms. See Arbelaez, 626 So.2d at 177 (finding that "facts [of the case] show beyond a reasonable doubt the existence of the [HAC] aggravating circumstance"); id. (same as to CCP aggravating circumstance). Thus, we affirm the trial court's summary denial of relief on this claim.
In claim two Arbelaez contends that Judge Leslie Rothenberg erred in denying his motion to disqualify her. Arbelaez alleged two grounds for disqualifying Judge Rothenberg: (1) she conducted an ex parte hearing; and (2) she could not be fair and *916 impartial due to her public pro-prosecution judicial campaign and her previous employment as a prosecutor in Dade County at the time Arbelaez was prosecuted.
A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing. See Correll v. State, 698 So.2d 522, 524 (Fla.1997). To determine if a motion to disqualify is legally sufficient, this Court looks to see whether the facts alleged would place a reasonably prudent person in the fear of not receiving a fair and impartial trial. Id.
First, we consider Arbelaez's claim that Judge Rothenberg conducted an ex parte hearing. In Rose v. State, 601 So.2d 1181, 1183 (Fla.1992), this Court held that "a judge should not engage in any conversation about a pending case with only one of the parties participating in that conversation. Obviously, we understand that this would not include strictly administrative matters not dealing in any way with the merits of the case." In the instant case, the ex parte communication involved the judge setting a time period for the State to file its response to Arbelaez's 3.850 motion, at which time a date for argument on the issue of an evidentiary hearing could be set. The judge also stated that Arbelaez could set his motion to compel production of public records for any convenient date. These issues fall into the category of strictly administrative matters that are not prohibited by Rose. Thus, this ground for disqualification was not legally sufficient.
As to the claims of bias and prejudice, there was nothing in Arbelaez's allegations to show that Judge Rothenberg had a personal bias or prejudice against him. Neither her "tough-on-crime" stance nor her former employment as a prosecutor was legally sufficient for disqualification. See Tafero v. State, 403 So.2d 355, 361 (Fla.1981) (finding that judge's former employment as a highway patrol officer did not require him to recuse himself from first-degree murder trial where one of the victims was a highway patrol officer); see also 14A Fla. Jur.2d Criminal Law § 1335 (1993) (grounds for disqualification have not been established based upon a judge's previous occupation). In his motion to disqualify, Arbelaez asserted that because Judge Rothenberg was a Dade County prosecutor at the time he was prosecuted and convicted and because she had a working relationship with his prosecutor at trial, she "may have personal knowledge and may be a material witness to facts and events during the relevant time period." However, Arbelaez presented no specific facts other than his subjective fear that the judge may have some information. A "petitioner's subjective fears ... are not `reasonably sufficient' to justify a `wellfounded fear' of prejudice." Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986); see also 5-H Corp. v. Padovano, 708 So.2d 244, 248 (Fla.1997) (finding claims of judicial prejudice to be "speculative, attenuated, and too fanciful to warrant relief" where petitioner argued that the district court judges may have been "embarrassed, humiliated and even outraged" by subject course of events). Thus, we do not find that Judge Rothenberg abused her discretion in denying Arbelaez's motion to disqualify.
Claim three involves the disclosure of Arbelaez's former trial counsel's files. After Arbelaez filed his postconviction motion alleging various claims of ineffective assistance of trial counsel, the State filed a motion to compel production of trial counsel's files. At the hearing on this motion, the state attorney asserted that the State needed access to trial counsel's files in order (1) to investigate and defend the allegations of ineffective assistance alleged in the motion and (2) to investigate whether Arbelaez or his collateral counsel committed perjury in the motion and bring *917 appropriate charges against them.[6] The trial court ruled that no privilege attaches to trial counsel's files after a defendant files for postconviction relief in which ineffective assistance of trial counsel is alleged. However, the trial court sealed the files in question and the State agreed not to seek access to the files pending the outcome of Arbelaez's appeal of the summary denial of his postconviction motion to this Court.
The real issue here is the point at which trial counsel's files must be disclosed when a defendant files a 3.850 motion claiming ineffective assistance of counsel. Arbelaez acknowledges that the State would be entitled to the files if the trial court granted an evidentiary hearing as to the claim, but contends that access should not be granted if the claim is summarily denied. The State asserts that it would be in a much better position to assess ineffective assistance claims raised in a defendant's motion if it has access to trial counsel's files prior to filing a response to the postconviction motion. The State argues that access at this stage would streamline the postconviction process.
A defendant may not invoke the attorney-client privilege to preclude trial counsel from testifying about their conversations when those discussions relate to the defendant's claims of ineffective assistance. See Turner v. State, 530 So.2d 45, 46 (Fla.1987); see also § 90.502(4)(c), Fla. Stat. (1999) ("There is no attorney-client privilege ... when [a] communication is relevant to an issue of breach of duty by the lawyer to the client ... arising from the lawyer-client relationship."). Under such circumstances, the attorney-client privilege is also waived as to trial counsel's files. See Reed v. State, 640 So.2d 1094, 1097 (Fla.1994); accord LeCroy v. State, 641 So.2d 853 (Fla.1994). Further, the waiver of the attorney-client privilege occurs "when [the defendant] file[s] a motion for postconviction relief claiming ineffective assistance of counsel." Reed, 640 So.2d at 1097 (emphasis added).
Thus, we agree with the trial court's ruling that Arbelaez waived his attorney-client privilege as to trial counsel's files when he filed his motion claiming that counsel rendered ineffective assistance by failing to adequately investigate and prepare for trial.[7] As explained in Reed, the State "will ordinarily be entitled to examine the trial attorney's entire file." 640 So.2d at 1097. However, Arbelaez "may move to exclude from discovery any portion of the file which contains matters unrelated to the crimes for which [he] was convicted." Id. If such a motion is filed, then "the court shall conduct an in-camera inspection of that portion of the file in question to determine whether it should be disclosed." Id.
Claim four involves public records that Arbelaez requested from the City of Miami Police Department, the Dade County State Attorney's Office, and the Attorney General's Office. Arbelaez contends that the police department failed to turn over various records involving witness statements in his murder conviction, his confession to the police about the incident, and a separate arrest in 1986. The trial court conducted *918 a hearing regarding the production of the requested documents. Following the hearing, the court determined that the records were either introduced as evidence at trial (videotape, audiotape, and transcript of Arbelaez's confession), provided to trial counsel prior to trial through discovery (copies of the confession materials and witness statements), or did not exist (no police report was generated for the 1986 arrest that was no-actioned). In short, the court concluded that no documents were being withheld by the police department.
The State Attorney's Office and the Office of the Attorney General maintained that the records sought by Arbelaez were not public records. The trial court conducted an in-camera inspection of the requested documents, which included the prosecutor's trial notes and outlines, deposition notes, and telephone messages. The court concluded that none of these documents were public records, except for one telephone message that "probably did not qualify as a Public record" but which the court nevertheless turned over to Arbelaez. Arbelaez raises several arguments on appeal regarding these documents. First, he contends that the court's disclosure of the alleged non-public record telephone message waived the exempt status of the remaining documents. Second, he argues that the trial court's inspection was not legally sufficient because the judge did not compare the "preliminary notes" with a final document drafted from the notes.
We find no merit to these arguments. First, the voluntary disclosure of a non-public record did not automatically waive the exempt status of the other documents. Second, we have reviewed the challenged documents and conclude that the trial court correctly found that they did not constitute public records. "[P]retrial materials which include notes from the attorneys to themselves designed for their own personal use in remembering certain things or preliminary guides intended to aid the attorneys when they later formalize their knowledge are not within the term `public record.'" Lopez v. State, 696 So.2d 725, 728 (Fla.1997); accord State v. Kokal, 562 So.2d 324, 327 (Fla.1990). The documents from the state attorney's office included handwritten notes dealing with trial strategy and the cross-examination of witnesses; those from the attorney general's office included handwritten notes of case law and notations to the record on appeal which were used in preparation for the direct appeal brief and oral argument.
Thus, the record supports the trial court's determination that the requested documents either were provided to Arbelaez, did not exist, or were not public records. Accordingly, we find no error on this point.
In his fifth claim, Arbelaez asserts that the government took advantage of his mental infirmities and used both psychological coercion and deception to secure his return to the United States from Colombia and to obtain his confession. The trial court noted that the government's actions in negotiating Arbelaez's return to the United States and the telephone statements he made to the Miami police officers while he was still in Colombia were presented to the jury at trial and reviewed by this Court on direct appeal. Thus, the trial court concluded that the issues of coercion and deception either were or should have been raised on direct appeal and were procedurally barred from consideration in postconviction proceedings. Additionally, the trial court noted that Arbelaez submitted no evidence of improper police conduct and none was contained in the record, and thus the claim was legally insufficient.
In his direct appeal to this Court, Arbelaez argued that his telephone statements from Colombia should have been suppressed because the police should have given him a Miranda warning before asking him any questions over the telephone. He further argued that this failure tainted his subsequent statements in Miami, which *919 were made after his arrest and after proper Miranda warning. This Court concluded that all of the statements were properly admitted because Miranda warnings are not required outside the context of custodial interrogation and Arbelaez was not in custody at the time he made his statements over the telephone from Colombia. See Arbelaez, 626 So.2d at 175. In presenting the Miranda issue on appeal, Arbelaez specifically claimed that the police officers had "subdued" his will through kindness and friendliness and had "deceived" him as to his legal rights. Appellant's Initial Brief at 20, Arbelaez v. State, 626 So.2d 169 (Fla.1993)(No. 77,668). Thus, we conclude that the instant claim is merely a recouching of the claim already presented on direct appeal and rejected by this Court and is thus procedurally barred in this postconviction proceeding. See Quince v. State, 477 So.2d 535, 536 (Fla. 1985) (finding it inappropriate to use a different argument to relitigate a claim raised and rejected on direct appeal).
As his sixth claim, Arbelaez contends that trial counsel provided ineffective assistance when he permitted Juror David Kelly, whom he had earlier struck peremptorily, to sit as an alternate juror. The record shows that counsel agreed to this arrangement after the trial court explained that in order to avoid interviewing a new panel of prospective jurors the trial would proceed with only one alternate juror. Furthermore, the record shows that Kelly was discharged when the jury began deliberations and did not participate in either the guilt or the penalty phase deliberations. On this record, Arbelaez failed to prove either deficient performance or prejudice. Thus, the trial court properly denied the claim without an evidentiary hearing.
Arbelaez contends that the one-year time limit imposed on capital defendants by Florida Rule of Criminal Procedure 3.851 for filing postconviction motions is unconstitutional (claim 10). This argument has been repeatedly rejected by this Court. See, e.g., Koon v. Dugger, 619 So.2d 246, 251 (Fla.1993).
Claims 7 (the record on appeal is incomplete and unreliable), 8 (the introduction of gruesome photographs), 11 (the constitutionality of Florida's death penalty scheme), 12 (innocence of the death penalty),[8] and 13 (inability to conduct juror interviews) are procedurally barred as they either were not raised on direct appeal or were raised and rejected by this Court. See Smith v. State, 445 So.2d 323, 325 (Fla.1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").
In addition to finding the appellate record issue procedurally barred, the trial court also concluded that the claim was legally insufficient because Arbelaez failed to articulate any attempts to obtain any missing record and did not allege how he had been prejudiced by the incomplete *920 record. The trial court also concluded that the photograph issue was insufficient because Arbelaez failed to specify which photographs were not objected to by trial counsel. In fact, the record of the trial shows that trial counsel objected to the admission of every photograph that depicted the victim's body and only failed to object to the dock area photographs showing the location where the victim's body was taken after being recovered from the water. Thus, even if claims 7 and 8 were not procedurally barred, summary denial was appropriate. We also note that this Court has repeatedly rejected claims relating to the constitutionality of the death penalty. See, e.g., Provenzano v. Moore, 744 So.2d 413 (Fla.1999); Jones v. State, 701 So.2d 76, 79 (Fla.1997), cert. denied, 523 U.S. 1014, 118 S.Ct. 1297, 140 L.Ed.2d 335 (1998); Medina v. State, 690 So.2d 1241, 1244 (Fla.1997). Moreover, the Florida Legislature recently amended the death penalty statute to provide that execution shall be by lethal injection unless the sentenced person affirmatively elects to be executed by electrocution. See ch. 00-2, § 2, Laws of Fla.
The trial court did not address Arbelaez's claim that he was prohibited from interviewing the jurors.[9] While we would normally send an unaddressed claim back for the trial court to rule upon, we conclude that remand on this issue is unnecessary because the claim is both procedurally barred and legally insufficient. Any claims relating to Arbelaez's inability to interview jurors should and could have been raised on direct appeal. See Smith. Furthermore, Arbelaez did not make a prima facie showing of any juror misconduct in his postconviction motion below.[10] Instead, he appears to be complaining about a defendant's inability to conduct "fishing expedition" interviews with the jurors after a guilty verdict is returned. Thus, even if the claim were not procedurally barred, Arbelaez would not be entitled to relief on the grounds he asserted and no evidentiary hearing was required on this claim.
For the reasons discussed above, with the exception of the claim that trial counsel rendered ineffective assistance during the penalty phase, we affirm the trial court's summary denial of relief on Arbelaez's 3.850 claims. However, because the record does not conclusively demonstrate that Arbelaez is entitled to no relief on his claim of ineffective assistance of counsel during the penalty phase, the trial court could not properly deny his postconviction motion without an evidentiary hearing. See, e.g., Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). Thus, we remand this matter to the trial court with instruction to conduct an evidentiary hearing on this claim.
It is so ordered.
WELLS, C.J., and SHAW, HARDING and LEWIS, JJ., concur.
QUINCE, J., concurs in part and dissents in part with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
QUINCE, J., concurring in part and dissenting in part.
I agree with the majority that the defendant is entitled to an evidentiary hearing *921 on his claim that trial counsel was ineffective for failing to more fully investigate mental health issues during the penalty phase. Because the record does not conclusively refute this claim, Arbelaez should have an evidentiary hearing. See Hoffman v. State, 571 So.2d 449 (Fla.1990).
However, he is also entitled to an evidentiary hearing on the claim that trial counsel was ineffective during the guilt phase of this capital proceeding, especially the claim involving the presentation of mental health evidence at the motion to suppress hearing. While the record reflects trial counsel filed and litigated a motion to suppress, the motion to suppress was not based on involuntariness due to Arbelaez' mental condition. The two arguments made for suppression of his statements were that law enforcement officers improperly failed to give warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to talking with him on the phone in Columbia, and the statements made in Miami were a result of the initial illegality. See Arbelaez v. State, 626 So.2d 169 (Fla.1993).
Arbelaez now argues the waivers of his Miranda rights prior to the statements taken in Miami were involuntary because of his mental condition, epilepsy, low intelligence,[11] and cultural differences. The argument was not made by trial counsel prior to trial, and there is nothing in the record to suggest that this tactic was considered and abandoned by counsel. Simply put, there is nothing in the record which conclusively refutes the allegation that trial counsel should have filed a motion to suppress based on the lack of voluntariness of his waiver of Miranda rights.
By remanding for an evidentiary hearing on Arbelaez' mental condition for purposes of mitigation, we have acknowledged that his mental state was an issue during the penalty phase. We simply do not know whether it should have been an issue during the guilt phase as well; we need to hear trial counsel's input on this matter.
I would remand for an evidentiary hearing on counsel's effectiveness in both the guilt and penalty phases of this case.
ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Arbelaez was advised of his rights in Spanish and there was no claim of a language barrier.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that sentencer may not be precluded from considering as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death).
[5] Caldwell v. Mississippi, 472 U.S. 320, 341, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (stating that jury must be fully advised of the importance of its role and neither comments nor instructions may minimize the jury's sense of responsibility for determining the appropriateness of death).
[6] The State concedes in its brief to this Court, and we agree, that it would create a conflict of interest for a prosecutor to simultaneously litigate a postconviction motion and investigate either the defendant or collateral counsel's veracity as to allegations contained in the motion. Thus, we caution that the second reason asserted by the State at the hearing below is not a proper basis for either seeking or granting access to trial counsel's files.
[7] In his motion for postconviction relief Arbelaez raised a number of claims of ineffective assistance of counsel. Arguably, trial counsel's files were relevant to Arbelaez's claims that counsel failed to: present evidence that epilepsy, brain damage, and retardation precluded Arbelaez from forming the requisite specific intent for first-degree murder and kidnapping; investigate or develop evidence that Arbelaez was unable to make a valid waiver of his Miranda rights; and investigate, develop or present evidence of statutory and nonstatutory mitigation.
[8] Claim 12 includes the following subclaims that Arbelaez contends result in his "innocence of the death penalty": the HAC and CCP instructions that the jury was given are unconstitutionally vague and the murder in course of a felony aggravator is an unconstitutional automatic aggravating factor. On direct appeal, Arbelaez did not challenge the vagueness of the HAC and CCP instructions, but only the applicability of these factors to his case. See Arbelaez v. State, 626 So.2d 169, 176-177 (Fla.1993). Thus, the part of the claim relating to the instructions is procedurally barred from consideration in postconviction proceedings. Similarly, Arbelaez's challenge of the murder in course of a felony aggravator is procedurally barred because not raised on direct appeal. Moreover, the issue of the proportionality of Arbelaez's death sentence was raised on direct appeal and rejected by this Court. See Arbelaez, 626 So.2d at 178. (finding that death is not a disproportionate penalty based on record evidence of three serious aggravating circumstances and scant mitigation). It is not appropriate to revisit this issue in a new guise. See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla.1994) ("Proceedings under rule 3.850 are not to be used as a second appeal; nor is it appropriate to use a different argument to relitigate the same issue.").
[9] This was claim VI in Arbelaez's postconviction motion at the trial court. The trial court's order mistakenly labeled the subsequent claim of government coercion as claim VI and never addressed the juror interview claim at all.
[10] Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar prohibits a lawyer from initiating communication with any juror regarding the trial with which the lawyer is connected except to determine whether the verdict may be subject to legal challenge. The rule provides that the lawyer "may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist." Before conducting such an interview, the lawyer must file a notice of intention to interview setting forth the name of the juror(s) to be interviewed and deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview.
[11] Postconviction counsel has alleged that Arbelaez not only suffers from epilepsy but he also has an IQ of 67, suffers from mental retardation and has Organic brain damage.