822 So.2d 1269 (2002)
William Earl SWEET, Petitioner,
v.
Michael W. MOORE, Secretary, Florida Department of Corrections, Respondent.
No. SC01-2867.
Supreme Court of Florida.
June 13, 2002.
*1270 Michael P. Reiter, Capital Collateral CounselNorthern Region, and John M. Jackson, Assistant Capital Collateral CounselNorthern Region, Tallahassee, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, FL, for Respondent.
PER CURIAM.
William Earl Sweet, a prisoner under sentence of death, petitions this Court for writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons that follow, we deny the petition.

*1271 BACKGROUND
Sweet was convicted and sentenced to death for the June 27, 1990, murder of Felicia Bryant. See Sweet v. State, 624 So.2d 1138, 1139 (Fla.1993).[1] The facts of this crime are provided in detail in the case on direct appeal. See id.
The jury recommended a death sentence by a vote of ten to two, and after concluding that the aggravating circumstances of the crime[2] outweighed the mitigating circumstances,[3] the trial court followed the jury's recommendation. See id. This Court affirmed the convictions and sentences on direct appeal. See id.[4] The United States Supreme Court denied certiorari. See Sweet v. Florida, 510 U.S. 1170, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994).
Sweet filed an initial motion for postconviction relief on August 1, 1995, and filed an amended motion on June 30, 1997, raising twenty-eight claims.[5] After holding a *1272 Huff[6] hearing, the trial court granted an evidentiary hearing on four claims,[7] but summarily denied Sweet's remaining claims. After the evidentiary hearing, the trial court denied relief on the four remaining claims. See Sweet v. State, 810 So.2d 854, 858 (Fla.2002). On appeal of the trial court's denial of postconviction relief, Sweet raised six claims.[8] The Court rejected all of Sweet's claims and affirmed the trial court's denial of postconviction relief. See id. at 858-71.
Sweet now files this petition for writ of *1273 habeas corpus, raising four claims.[9]

ANALYSIS
Sweet's first claim in his habeas petition arises from his contention that Sweet's jury was subjected to outside influence that affected its ability to make a fair determination of Sweet's guilt. The factual background for this claim is that after a recess during the presentation of the State's case, two of Sweet's friends, Rachael Russell and Stacey Williams, told defense counsel that, while in the snack bar, they overheard a law enforcement officer say in the presence of several jurors that Sweet was guilty. The trial court questioned both Russell and Williams, as did both the State and the defense. The trial court then brought the jury in and inquired whether any of the jurors had heard a uniformed officer make a statement about Sweet's case in the snack bar. When none of the jurors responded affirmatively, the trial proceeded. Defense counsel did not object or ask for a mistrial.
Sweet now claims that Rule Regulating the Florida Bar 4-3.5(d)(4)[10] is unconstitutional because it precluded Sweet's attorneys, including his postconviction attorneys, from interviewing the jurors after they returned a verdict to determine if any constitutional errors occurred in his case. Sweet maintains that appellate counsel was ineffective in failing to raise this unpreserved claim as an issue on direct appeal so as to protect Sweet's right to a fair and adequate postconviction proceeding.[11]
*1274 Because no objection was raised at trial, appellate counsel may only be deemed ineffective if the failure to raise the constitutionality of rule 4-3.5(d)(4) rises to the level of fundamental error. See Roberts v. State, 568 So.2d 1255, 1261 (Fla. 1990); Bertolotti v. Dugger, 514 So.2d 1095, 1097 (Fla.1987). This Court has defined "fundamental error" as an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996).
We conclude that Sweet has not demonstrated any error, let alone fundamental error, in his counsel's failure to raise as an issue the constitutionality of rule 4-3.5(d)(4) on direct appeal. First, there is no indication of any juror misconduct in this case. See Morris v. State, 811 So.2d 661, 667 (Fla.2002). Second, this Court has rejected similar constitutional challenges to rule 4-3.5(d)(4). See Johnson v. State, 804 So.2d 1218, 1224 (Fla.2001) (rejecting contention that rule 4-3.5(d)(4) conflicts with defendant's constitutional rights to a fair trial and effective assistance of counsel); Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000) (rejecting challenge to rule 4-3.5(d)(4) where the defendant's complaint was tantamount to his inability to engage in fishing expedition interviews with the jurors after a guilty verdict was returned). Therefore, we conclude that this claim has no merit. Consequently, appellate counsel cannot be ineffective for failing to raise a meritless claim. See Rutherford v. Moore, 774 So.2d 637, 644 (Fla.2000).
In Sweet's second claim, he contends that the standard jury instruction on weighing mitigation and aggravation given by the trial court suggested that the mitigators had to outweigh the aggravators, and thus shifted the burden to the defendant to prove that a life sentence was appropriate. Sweet did not object to this instruction at trial.[12] To the extent that Sweet attempts to raise this issue as an ineffective assistance of appellate counsel claim, we deny relief. The argument that the standard jury instruction impermissibly shifts the burden to the defense has been repeatedly rejected by this Court. See, e.g., Carroll v. State, 815 So.2d 601, 622-23 (Fla.2002); Rutherford, 774 So.2d at 644 & n. 8; Downs v. State, 740 So.2d 506, 517 n. 5 (Fla.1999); San Martin v. State, 705 So.2d 1337, 1350 (Fla.1997); Shellito v. State, 701 So.2d 837, 842 (Fla. 1997). The failure to raise meritless claims cannot render appellate counsel's performance ineffective. See Rutherford, 774 So.2d at 644.
In Sweet's third claim, he asserts that the jury received inadequate jury instructions regarding the avoid arrest aggravator. Specifically, Sweet contends that although the trial court provided the jury with the standard jury instructions for this aggravator, the instructions did not include this Court's limiting construction of the aggravator that requires that witness elimination be the sole or dominant motive for the murder. Sweet did not object to this jury instruction at trial.[13]
*1275 To the extent that Sweet attempts to raise this issue as an ineffective assistance of appellate counsel claim, we deny relief. This Court has upheld the constitutionality of the standard jury instruction for the avoid arrest aggravator. See, e.g., Davis v. State, 698 So.2d 1182, 1192 (Fla. 1997) (rejecting defendant's argument that this Court's construction of avoid arrest aggravator be incorporated into jury instruction because standard jury instruction was legally adequate); Whitton v. State, 649 So.2d 861, 867 n. 10 (Fla.1994) (concluding that standard jury instruction for avoid arrest aggravator was not vague and did not require a limiting instruction in order to make this aggravator constitutionally sound). Moreover, even if appellate counsel was deficient for failing to raise as an issue the adequacy of the avoid arrest instruction, there would be no prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because this Court concluded on direct appeal that the evidence presented at trial clearly established the existence of the avoid arrest aggravator beyond a reasonable doubt. See Sweet, 624 So.2d at 1142; see, e.g., Arbelaez, 775 So.2d at 915 (explaining that even if counsel was deficient for failing to object to aggravator instructions, there would be no prejudice because evidence established the existence of the aggravator). Therefore, because this claim has no merit, appellate counsel cannot be ineffective for failing to raise this claim on direct appeal. See Rutherford, 774 So.2d at 644.
Sweet's final habeas claim is that the jury should have been told that it was required to find beyond a reasonable doubt that the aggravators outweighed the mitigators before recommending a sentence of death, and that the failure to give this instruction is erroneous in light of the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Sweet concedes that this Court repeatedly has rejected the argument that Apprendi applies to capital sentencing schemes. See Bottoson v. State, 813 So.2d 31, 36 (Fla. 2002); King v. State, 808 So.2d 1237, 1245 (Fla.2002); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001); Mills v. Moore, 786 So.2d 532, 537-38 (Fla.2001). However, Sweet asserts that he raises this issue in order to preserve it for future litigation. We conclude that Sweet's Apprendi argument is without merit.[14]
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Sweet also was charged and convicted of three counts of attempted first-degree murder and burglary. See id.
[2] The trial court found the following aggravating circumstances: (1) Sweet had been convicted of several violent felonies, including armed robbery, possession of a firearm by a convicted felon, riot, resisting arrest with violence, and the contemporaneous attempted murders and burglary; (2) the murder was committed to avoid arrest; (3) the murder was committed during a burglary; and (4) the murder was cold, calculated, and premeditated. See id. at 1142.
[3] The trial court found no statutory mitigating circumstances, but found as nonstatutory mitigation that Sweet lacked true parental guidance as a teenager (slight weight). See id.
[4] Sweet raised the following claims on direct appeal: (1) the trial court erred by failing to adequately inquire into whether Sweet wanted to represent himself; (2) the trial court erred in admitting evidence that Marcine Cofer had been robbed three weeks before the murder and that Sweet participated in the robbery; (3) the trial court erred in finding that the murder was cold, calculated, and premeditated; (4) the trial court erred in finding that Sweet committed the murder to avoid arrest; (5) the trial court erred in finding that Sweet's prior conviction for possession of a firearm by a convicted felon qualified as a prior violent felony; and (6) the trial court erred in imposing four consecutive fifteen-year minimum mandatory sentences for the burglary and attempted murder convictions. See id. at 1139-43.
[5] These claims included: (1) Sweet was denied access to public records; (2) the one-year time limitation for filing a rule 3.851 motion for postconviction relief violates Sweet's due process and equal protection rights; (3) the "felony murder" statutory aggravating circumstance constitutes an unconstitutional "automatic statutory aggravating circumstance"; (4) the "avoid arrest" statutory aggravator was inapplicable in this case and the jury was erroneously instructed regarding this aggravator because the trial court improperly failed to further instruct the jury that the aggravator can be found only where it is the "dominant or only" motive for the defendant's commission of the murder; (5) the trial court's jury instruction on the "cold, calculated, and premeditated" aggravator was erroneous because it failed to instruct the jury that this aggravator required "heightened premeditation" and the evidence failed to establish the heightened premeditation necessary to support this aggravator; (6) the Jacksonville Sheriff's Office destroyed all of the evidence in this case, depriving Sweet of his right to conduct an independent analysis of this evidence using his own experts; (7) ineffective assistance during the guilt phase by: (a) failing to conduct an adequate pretrial investigation and preparation of Sweet's case; (b) failing to investigate other possible sources who would have had a motive to kill Marcine Cofer; and (c) failing to properly cross-examine Marcine Cofer and Solomon Hansbury; (8) ineffective assistance during the penalty phase by failing to investigate and prepare available mitigation evidence regarding Sweet's background; (9) Sweet was denied his right to a fair trial as a result of his jury being subjected to improper influences; (10) the jury was given inadequate instructions on the "prior violent felony," "great risk," "avoiding arrest," and "cold, calculated, and premeditated" aggravators; (11) Rule Regulating the Florida Bar 4-3.5(d)(4), which prohibits attorneys from interviewing jurors, caused Sweet's postconviction counsel to render ineffective assistance of counsel; (12) Sweet is innocent of first-degree murder and innocent of the death penalty; (13) the record fails to show Sweet's presence or his counsel's presence at five sidebar conferences and counsel rendered ineffective assistance by failing to object; (14) improper prosecutorial comments during the penalty phase in arguing that the jury should not be sympathetic towards Sweet and ineffective assistance in failing to object to this comment and in failing to request a "mercy instruction"; (15) alleged omissions in the record on appeal deprived Sweet of meaningful appellate and postconviction review and trial counsel rendered ineffective assistance in failing to ensure a complete record; (16) the trial court's failure to ensure that Sweet had a complete record on appeal deprived him of a proper direct appeal; (17) Sweet received a fundamentally unfair trial due to the sheer number and types of errors committed; (18) the penalty phase jury instructions improperly shifted the burden to Sweet to show that death was not the appropriate sentence for the jury to recommend; (19) the State's misleading evidence and improper argument deprived Sweet of a fair trial; (20) Sweet's contemporaneous felonies were improperly used to support the prior violent felony aggravator; (21) the State failed to prove that Sweet "knowingly" created a great risk of causing the death of other persons given that his mental state at the time of the murder prevented him from knowing this fact; (22) the trial court improperly used a prior possession of a firearm by a convicted felon conviction as a statutory aggravator because the conviction was unconstitutionally obtained; (23) Florida's death penalty statute is unconstitutional on its face and as applied; (24) the trial court erred in failing to consider nonstatutory mitigating circumstances; (25) the State's introduction of and argument regarding nonstatutory aggravators deprived Sweet of a fair sentencing recommendation; (26) the State's closing argument and the jury instructions during the penalty phase improperly diminished the jury's sense of responsibility in the sentencing process; (27) trial counsel failed to provide the two court-appointed mental health examiners with sufficient background information to allow them to adequately evaluate Sweet's competency to stand trial; and (28) the mental health officials that examined Sweet failed to render adequate mental health assistance. See Sweet v. State, 810 So.2d 854 (Fla.2002).
[6] Huff v. State, 622 So.2d 982 (Fla.1993).
[7] The trial court granted an evidentiary hearing on the following four claims: (1) trial counsel, Charlie Adams, failed to investigate and present evidence of other suspects; (2) Adams failed to present as potentially mitigating evidence Sweet's background history; (3) Adams failed to present background information to the mental health experts; and (4) the mental health experts conducted an inadequate evaluation. See Sweet, 810 So.2d at 858.
[8] Sweet raised the following six claims on appeal of the denial of postconviction relief: (1) whether counsel was ineffective during the guilt phase for failing to investigate and present evidence of other suspects; (2) whether counsel was ineffective during the penalty phase; (3) whether the trial court erred in failing to consider the cumulative effect of the newly discovered evidence concerning Sweet's innocence with the evidence that was not presented due to trial counsel's ineffectiveness; (4) whether counsel was ineffective regarding Sweet's competency evaluation by a mental health expert; (5) whether the trial court erred in summarily denying a hearing on Sweet's claims related to trial counsel's ineffectiveness and the State's misconduct that must be considered for their cumulative effect on the outcome of the guilt and penalty phases; and (6) whether the record on appeal is so incomplete that Sweet cannot meaningfully raise claims in this appeal. See id. at 858 n. 6.
[9] Sweet raises the following claims in this petition: (1) whether the rule prohibiting Sweet's lawyers from interviewing jurors to determine if error occurred at his trial is unconstitutional; whether the rule denied Sweet adequate assistance of counsel in pursuing his postconviction remedies; and whether appellate counsel was ineffective in failing to raise these claims in Sweet's direct appeal; (2) whether the penalty phase jury instructions improperly shifted the burden to Sweet to prove that death was an inappropriate sentence in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments, and whether appellate counsel was ineffective in failing to raise this claim in Sweet's direct appeal; (3) whether Sweet received inadequate instructions regarding the avoid arrest aggravator in violation of the Eighth and Fourteenth Amendments, and whether appellate counsel was ineffective for failing to raise this claim in Sweet's direct appeal; and (4) whether Sweet was denied a reliable and individualized capital sentencing because the jury was not instructed that it must find proof beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors before sentencing Sweet to death.
[10] Rule 4-3.5(d)(4) provides:

A lawyer shall not: ...
after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the venire or jurors in the course of official proceedings or as authorized by court rule or written order of the court.
[11] Although not raised on direct appeal, Sweet did raise a variation of this claim in his postconviction motion. Sweet contended in his postconviction motion that rule 4-3.5(d)(4) has caused his postconviction counsel to render ineffective assistance because Sweet's attorneys cannot interview jurors. The trial court rejected this claim, and Sweet did not appeal the denial of relief on this claim to this Court.
[12] Sweet raised this issue in his rule 3.850 motion, and the trial court concluded that the claim was both procedurally barred and without merit. Sweet did not appeal the denial of relief on this claim to this Court.
[13] Although on direct appeal Sweet challenged the trial court's finding regarding the application of the avoid arrest aggravator, he did not challenge the adequacy of the jury instruction on this aggravator. This Court concluded on direct appeal that the avoid arrest aggravator was established beyond a reasonable doubt. See Sweet, 624 So.2d at 1142. Moreover, Sweet raised the issue of the adequacy of the avoid arrest aggravator in his rule 3.850 motion, and the trial court concluded that the issue was both procedurally barred and without legal merit. Sweet did not appeal the trial court's ruling on this issue to this Court.
[14] Although the U.S. Supreme Court recently has granted review in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), cert. granted, ___ U.S. ___, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002), we continue to rely on our precedents on this issue until the United States Supreme Court rules to the contrary.