# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4699
_____

THEOPHILUS BESSELLIEU,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Steven B. Whittington, Judge.

September 14, 2018


B.L. THOMAS, C.J.

Appellant was tried and convicted of attempted murder of a law enforcement officer and aggravated assault of another law enforcement officer. Appellant and three friends were sitting in a parked car, with Appellant in the front passenger seat, when the police officer approached the driver for identification. The officer testified that Appellant pointed the gun directly in his face, no more than 18 inches away. It was only due to the officer's extremely fast defensive maneuver that he wasn't actually killed; he quickly ducked and turned away, but not fast enough to avoid the gas propellant from the gun's discharge, temporarily blinding him in one eye. The officer immediately returned fire into the vehicle. Appellant and the driver ran away, and went to the

same residence soon after the shooting. The driver turned himself in later that night.

The driver of the car testified that, before the shooting, Appellant said that if the police ever tried to "front him [I] will shoot him in the face." He also testified that he saw Appellant running away with the gun. One passenger identified Appellant as the shooter. The other passenger testified that, immediately after seeing a gun fire from within the car, he saw Appellant run away from the car with a gun in his hand.

Appellant was also convicted of aggravated assault of another law enforcement officer, based on Appellant pointing a gun at the pursuing officer. That officer testified that he arrived at the scene to see the officer who was the victim of the attempted murder, and another officer, with their guns drawn and pointed at an "SUV type vehicle." His attention was later drawn to a person who was not wearing a shirt, was breathing heavily, sweating profusely, and had blood on his face. This officer identified the person as Appellant.

After two commands to stop and show his hands, Appellant turned and ran, and the officer chased him. Appellant suddenly turned around and pointed what appeared to be a black firearm at the officer, who then fired at Appellant. The officer was in fear for his life. He "got a good look" at Appellant, because he was only ten feet from him when he saw him.

Officer Charles Wilkie testified that he was dispatched to the 4800 block of Dundee Avenue to assist in securing the perimeter of the incident. When he was about 20 yards away, he saw someone crossing the intersection. This person had no shirt on, which was strange, because it was cold outside. This person also appeared to be holding something in his hands or possibly holding his pants. Officer Wilkie lit up the area with his spotlight, and he then saw the other officer chasing the person he had spotted. That officer fired at the person he was pursuing. After the firing stopped, Officer Wilkie tracked Appellant with his police service dog. The dog led Officer Wilkie to a driveway, where he saw a Ford Bronco, with a pair of shoes and legs visible from underneath it. Officer Wilkie gave the dog a silent

2

command "to engage," and the dog "proceeded underneath the Bronco and engaged the suspect." Shortly thereafter, Appellant emerged.

A crime scene detective from the Jacksonville Sheriff's Office testified that he found three .45-caliber shell casings in the SUV: one on the driver's-side floorboard; another in the center console area; and another on the front passenger-side floorboard. He testified that he also found a live round outside the SUV on the driver's side and explained that a live round could be ejected if there was malfunction or if the slide on the gun was pulled. He further testified that a .45-caliber round was not standard issue from the Jacksonville Sheriff's Office. A firearm analyst testified that, in his expert opinion, the shell casings found at the first scene were fired from the gun that was recovered.

The defense called a firearm and tool-mark examiner for the Florida Department of Law Enforcement, who testified that the State did not find any gunshot residue on Appellant's hands and that .45-caliber ammunition would contain the necessary elements for gunshot residue analysis. But on cross-examination, he testified that a person could remove gunshot residue by common activity, such as rubbing one's hands together or on clothing or by "sweating profusely."

Appellant was found guilty of attempted murder and aggravated assault of a law enforcement officer. He was sentenced to life imprisonment for attempted murder and 15 years' imprisonment for aggravated assault.

In his direct appeal, Appellant argued that the trial court reversibly erred in failing to grant a mistrial when the prosecutor asserted in closing argument that Appellant stated he would shoot any police officer before going "back" to jail. During the trial, the State had agreed to redact the word "back," and the evidence did not include this version of Appellant's statement against interest. This Court affirmed Appellant's direct appeal without opinion. *Bessellieu v. State*, 37 So. 3d 850 (Fla. 1st DCA 2010) (table).

Appellant then filed a petition for habeas corpus, asserting fundamental error occurred in the jury instructions regarding a lesser-included offense and that appellate counsel provided ineffective assistance in failing to raise this argument. This court denied the petition on the merits without opinion. *Bessellieu v. State*, 57 So. 3d 873 (Fla. 1st DCA 2011).

Appellant then filed a motion for postconviction relief raising four grounds. The trial court denied all claims without an evidentiary hearing. This Court affirmed the lower court's order denying relief on three of those claims, but reversed and remanded for the trial court to attach records to conclusively refute Appellant's claim that the State failed to sign the criminal information, and that defense counsel was ineffective for failing to object to this purported error. *Bessellieu v. State,* 219 So. 3d 994 (Fla. 1st DCA 2017). After remand, the circuit court attached several informations filed in Appellant's case.

We hold that Appellant abused the judicial process by challenging the allegedly defective information through a claim of ineffective assistance of counsel. See *Arbelaez v. State*, 775 So. 2d 909, 915 (Fla. 2000) ("Arbelaez may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel."). Had defense counsel objected to the criminal information being filed without the State's signature, the State could have merely signed the information; thus, there is no possibility Appellant was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984) (holding that to show ineffective assistance of counsel, a defendant must demonstrate a reasonable probability that the outcome would have been different had counsel not acted deficiently). Further, such challenges to a defective information must be raised on direct appeal, not in a rule 3.850 motion. *See Williams v. State*, 642 So. 2d 67 (Fla. 1st DCA 1994); *cf. Logan v. State*, 1 So. 3d 1253, 1255 (Fla. 4th DCA 2009) (holding that a prosecutor's alleged failure to obtain sworn testimony from witness cannot be raised in motion for postconviction relief).

Appellant did not raise this deficiency before his trial; thus, any error which may have occurred when the State failed to sign the information was waived. *See Hamilton v. State*, 106 So. 3d

4

996 (Fla. 1st DCA 2013) ("[A] defect in an information is waived if no objection is timely made so long as the information does not wholly fail to state a crime."); *Colson v. State*, 717 So. 2d 554, 555 (Fla. 4th DCA 1998).

We affirm the trial court's order denying all relief.

AFFIRMED.

LEWIS and MAKAR, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

Theophilus Bessellieu, Appellant, pro se.

Pamela Jo Bondi, Attorney General, Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellee.

5