624 So.2d 1138 (1993)
William Earl SWEET, Appellant,
v.
STATE of Florida, Appellee.
No. 78629.
Supreme Court of Florida.
August 5, 1993.
Rehearing Denied October 14, 1993.
*1139 Nancy A. Daniels, Public Defender, and David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
William Sweet appeals his convictions for first-degree murder, three counts of attempted first-degree murder, and burglary, and his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
On June 6, 1990, Marcine Cofer was attacked in her apartment and beaten and robbed by three men. She could identify two of the men by their street names. On June 26, 1990, she was taken by Detective Robinson to the police station to look at pictures to attempt to identify the third assailant. When Robinson dropped Cofer off at her apartment, William Sweet was standing nearby and saw her leave the detective. Unknown to Cofer, Sweet had previously implicated himself in the robbery by telling a friend that he had committed the robbery or that he had ordered it done. Cofer asked her next-door neighbor, Mattie Bryant, to allow the neighbor's daughters, Felicia, thirteen, and Sharon, twelve, to stay with Cofer in her apartment that night. Mattie agreed, and the children went over to Cofer's apartment around 8 p.m.
At approximately 1 a.m. that evening, Sharon was watching television in the living room of Cofer's apartment when she heard a loud kick on the apartment door. She reported this to Cofer, who was sleeping in the bedroom, but because the person had apparently left, Cofer told Sharon not to worry about it and went back to sleep. Shortly thereafter, Sharon saw someone pulling on the living room screen. She awakened Cofer. The two then went to the door of the apartment, looked out the peephole, and saw Sweet standing outside. Sweet called Cofer by name and ordered her to open the door.
At Cofer's direction, Felicia pounded on the bathroom wall to get Mattie's attention in the apartment next door, and a few minutes later Mattie came over. The four then lined up at the door, with Cofer standing in the back of the group. When they opened the door to leave, Sweet got his foot in the door and forced his way into the apartment. Sweet's face was partially covered by a pair of pants. He first shot Cofer and then shot the other three people, killing Felicia. Six shots were fired. Cofer, Mattie, and Sharon were shot in the thigh, ankle and thigh, and buttock, respectively, and Felicia was shot in the hand and in the abdomen.
Sweet was convicted of first-degree murder, three counts of attempted first-degree murder, and burglary. The jury recommended a sentence of death by a vote of ten to two, and the trial court followed this recommendation.
Sweet's first argument on appeal is that the trial court erred by failing to adequately inquire into whether Sweet wanted to represent himself. Sweet was arrested on June 28, 1990. During a pretrial hearing, Sweet objected to his counsel's request for a continuance and stated that he wanted to go to trial immediately.[1] The conversation proceeded as follows:

*1140 THE DEFENDANT: I don't want to file for continuance. You told me on the 24th that this was going to be my trial. I want to make sure  I want to go to trial this week with Mr. Gazaleh. I'm not  he filed motions to continue. I'm not willing to. I want to go ahead and go to trial.
THE COURT: You have the right to represent yourself. You don't have to have a lawyer. If you want to represent yourself and you say you're ready to try the case this week we could do it.
THE DEFENDANT: Can't he go with me?
THE COURT: He's not ready.
THE DEFENDANT: If I get convicted  I don't have anybody if I get convicted? The law says you can't go to trial unless your lawyer is 
THE COURT: You're talking about your life here, Mr. Sweet.
THE DEFENDANT: I know that. I want to go to trial. I want to pick the jury.
THE COURT: Well, your lawyer is not ready.
THE DEFENDANT: Yes, sir. I want to pick the jury today and go to trial sometime this week.
THE COURT: And face the electric chair?
THE DEFENDANT: Yes, sir.
THE COURT: The law is very clear. If he is not ready to go to trial I can't make him. If you want to fire him and represent yourself that's your privilege. But I think it's probably a short walk to the electric chair to do that and that you're going to have lawyers working against you.
THE DEFENDANT: If that's the case I want to go ahead and pick the jury today and go ahead and elect Mr. Gazaleh.
THE COURT: Then you can do that.
THE DEFENDANT: Let's pick the jury then, Your Honor.
THE COURT: You want Mr. Gazaleh or do you 
THE DEFENDANT: If he don't want to represent me today and go to trial then I'll take my chances and just go ahead and go to trial.
THE COURT: Why do you want to go to trial today as opposed to a few weeks from now?
THE DEFENDANT: I want to make sure  they've left me sitting down where I ain't got no business down here. They've got me sitting down here 
... .
THE COURT: Do you have any witnesses subpoenaed to testify for you, Mr. Sweet?
THE DEFENDANT: I have no witnesses.
THE COURT: Do you know who the State is going to call as witnesses against you?
THE DEFENDANT: The State ain't got no witnesses. They haven't took no depositions who they going to put on. They haven't, who they going to put.
THE COURT: They don't have to take depositions.
THE DEFENDANT: I have got the right to meet my accused. Who are they going to put on the stand?
THE COURT: They have got a whole bunch of police officers and detectives.
THE DEFENDANT: Police officers ain't the ones that initiated and orchestrated this crime. They ain't got no key witnesses. They ain't got 
THE COURT: They don't have to have depositions to go to trial. Depositions are for the defense, not for the State.
THE DEFENDANT: Then go to trial.
THE COURT: Well, Mr. Sweet, I don't think you're capable of representing yourself because you don't understand anything that happens at a trial, do you? Have you been through a jury trial before?
... .
THE DEFENDANT: I went all the way through trial but it was mistrial. The jury *1141 had deliberated. They didn't come up with a verdict.
THE COURT: Mr. Sweet, under the circumstances I'm afraid that if I don't grant Mr. Gazaleh's motion for continuance and proceed to trial I'm going to waste everybody's time because the Supreme Court is going to send it right back here to be tried again and you're not going to get this thing disposed. It's going to take longer.
... .
THE COURT: Hear me out. I listened to you, you listen to me. The Supreme Court automatically will review your case if you get the electric chair. When they do and I see what happened they're going to send it right back here about six months from now and say Judge Haddock, put a lawyer back on the case and try him again. The way you did it wasn't right. So what have we gained.
THE DEFENDANT: Same way  the State ain't ready to go to trial neither.
THE COURT: They can get ready.
THE DEFENDANT: Get ready. Let's go.
THE COURT: I'll note the defendant's objection and overrule it and grant Mr. Gazaleh's motion for continuance.
... .
THE COURT: Go ahead and set your depositions and then maybe somebody 
THE DEFENDANT: Excuse me. Can you fire him and can we go to trial then? I cannot wait, set here for the first of the year.
THE COURT: I don't want to try your case twice, Mr. Sweet. I only want to try it once.
THE DEFENDANT: I'm ready to go to trial. If we talking about the first of the year that ain't that much time to get no case going. Go ahead and fire him and then we go to trial.
THE COURT: We'll set the case for January the 14th for jury trial.
It is clear from the above conversation that Sweet's overriding concern was proceeding to trial immediately. It is also clear Sweet mistakenly believed that if he was tried immediately the State would be unprepared and he would be acquitted. Sweet had a fundamental misunderstanding of the State's case against him and of the nature of the preparation of a defense. He obviously did not understand that the fact there were no depositions taken of State witnesses did not inure to his benefit, but to the benefit of the State. While the court's inquiry fell short of the requirements of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and Florida Rule of Criminal Procedure 3.111(d), the court could not have reasonably permitted Sweet to represent himself and go to trial immediately when it was evident that he was unprepared to do so.
Further, Sweet later voluntarily withdrew his pro se demand for speedy trial filed January 30, 1991, indicating his concern for an immediate trial had diminished. Sweet ultimately proceeded to trial in May of 1991 with a different attorney, and at his sentencing Sweet spontaneously pronounced his satisfaction with counsel's performance. Therefore, while it appears that Sweet unequivocally requested discharge of counsel, and the court failed to conduct an adequate inquiry into Sweet's ability to represent himself, under the circumstances of this case the failure was rendered moot by Sweet's subsequent acceptance of and satisfaction with new counsel and by the dissipation of his reason for wanting counsel removed.[2]See Scull v. State, 533 So.2d 1137, 1139-41 (Fla. 1988) *1142 (failure to adequately inquire into request to discharge attorney rendered moot by defendant's subsequent expressions of satisfaction with attorney's performance), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989).
Sweet next argues that the trial court erred in admitting evidence that Cofer had been robbed three weeks before the murder and that Sweet participated in the robbery. We agree with the State that this evidence was adequately tied to Sweet and was relevant to show his motive for the shooting. We find substantial competent evidence to support Sweet's convictions, and they are accordingly affirmed.
Turning to the penalty phase of trial, in imposing the death sentence the trial court found the following aggravating circumstances: (1) Sweet had previously been convicted of several violent felonies, including armed robbery, possession of a firearm by a convicted felon, riot, resisting arrest with violence, and the contemporaneous attempted murders and burglary; (2) the murder was committed to avoid arrest; (3) the murder was committed during a burglary; and (4) the murder was cold, calculated, and premeditated.[3] The court found no statutory mitigating circumstances, but found as nonstatutory mitigation that Sweet lacked true parental guidance as a teenager. This mitigation was given slight weight.
Sweet first argues that the trial court erred in finding that the murder was cold, calculated, and premeditated. In order to prove the existence of this aggravator, the State must show a heightened level of premeditation establishing that the defendant had a careful plan or prearranged design to kill. Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Here, the State proved such a prearranged plan to kill Marcine Cofer. Sweet's motive was to eliminate a potential witness in a pending robbery investigation. After seeing Cofer talking to the police, Sweet went to her apartment, late at night, with a gun. He spent some time pounding on the door and attempting to break in. Then, when the door was opened, he pushed his way in and immediately began shooting. He attempted to cover his face with a pants leg, and he said nothing upon entering the apartment. This scenario is consistent with a plan to kill and not, as Sweet argues, a plan to merely scare or harass Cofer so she would not implicate him in the robbery.
Although Felicia Bryant was not the actual subject of the planning, this fact does not preclude a finding of cold, calculated premeditation. As we stated in Provenzano v. State, 497 So.2d 1177, 1183 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987), "[h]eightened premeditation necessary for this circumstance does not have to be directed toward the specific victim." It is the manner of the killing, not the target, which is the focus of this aggravator. Id.
Finally, the key to this factor is the level of preparation, not the success or failure of the plan, and we therefore reject Sweet's argument that because there were survivors of the shooting this aggravator is not applicable. Sweet was probably surprised by the presence of Cofer's neighbors, and planning is not the equivalent of shooting skill.
Sweet next argues that the trial court erred in finding that he committed the murder to avoid arrest. In making this determination, the trial court found that Sweet's motive in going to Cofer's apartment was to eliminate her as a witness to the prior robbery. The court pointed out that Sweet had seen Cofer talking to the police earlier on the day of the murder, that there was substantial evidence he had been involved in the prior robbery of Cofer, and that he made statements after his arrest which indicated his intent. While it turned out that an innocent bystander, Felicia, was killed instead of the target, Cofer, the dominant motive for the killing remains the same, and we agree with the trial court that this aggravator was established beyond a reasonable doubt.
Sweet's next argument is that the trial court erred in finding that his prior conviction for possession of a firearm by a *1143 convicted felon qualified as a prior violent felony. While this offense is not per se a crime of violence, the circumstances of this particular crime were shown to have been violent, as Sweet used the firearm to hit someone in the face and ribs. However, the trial court did err in failing to instruct the jury that they had to consider the individual circumstances of the crime in order to determine if it was violent before weighing it as a prior violent felony. Johnson v. State, 465 So.2d 499, 505 (Fla.), cert. denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985). In light of the fact that there were several other convictions supporting the prior violent felony aggravator, the error was harmless.
Finally, Sweet argues that the trial court erred in imposing four consecutive fifteen-year minimum mandatory sentences for the burglary and attempted murder convictions. We agree that the imposition of consecutive minimum mandatory sentences when the offenses arose out of the same criminal episode was error under Daniels v. State, 595 So.2d 952 (Fla. 1992).
Accordingly, we affirm Sweet's convictions and his sentence of death. We also affirm Sweet's other sentences, except that the minimum mandatory aspects thereof shall be deemed to run concurrently with each other.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs as to the conviction and concurs in result only as to the sentence.
NOTES
[1] This hearing took place on November 5, 1990, when Sweet was represented by Mr. Gazaleh. Gazaleh was appointed to represent Sweet on September 19, 1990, after Sweet's public defender reported a conflict of interest. Gazaleh was subsequently replaced by Mr. Adams when Gazaleh, too, had a conflict of interest. Adams ultimately represented Sweet at trial with the assistance of Mr. Moore.
[2] Sweet also alludes to another problem he had with a different attorney, Mr. Adams, asking for a continuance. After reviewing the transcript of the January 14, 1991, hearing, we conclude that Sweet did not ask to represent himself at that time, but rather tried to fire Adams because he was not satisfied with his performance. The trial court made adequate inquiry into the reason for Sweet's dissatisfaction and properly found that dismissal of counsel was not justified. See Bowden v. State, 588 So.2d 225, 229-30 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992); Peede v. State, 474 So.2d 808, 815-16 (Fla. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 575 (1986). Even if the trial court had erred in its handling of this proceeding, the same analysis would apply as discussed above and any error would have been rendered moot.
[3] § 921.141(5)(b), (e), (d), (i), Fla. Stat. (1989).