# Supreme Court of Florida

————————

No. SC17-1987
————————

**WILLIAM EARL SWEET,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[May 24, 2018]

PER CURIAM.

William Earl Sweet appeals the postconviction court's order denying his sixth successive motion for postconviction relief based on a claim of newly discovered evidence after an evidentiary hearing.[1]  For the reasons that follow, we affirm the postconviction court's order denying Sweet relief.

## FACTUAL BACKGROUND

In 1991, a jury convicted Sweet of one count of first-degree murder, three counts of attempted first-degree murder, and one count of burglary.  *Sweet v. State*

---

1.  We have jurisdiction.  Art. V, § 3(b)(1), Fla. Const.

(*Sweet I*), 624 So. 2d 1138, 1139 (Fla. 1993). On direct appeal, this Court

explained the details underlying Sweet's convictions:

> On June 6, 1990, Marcine Cofer was attacked in her apartment
> and beaten and robbed by three men. She could identify two of the
> men by their street names. On June 26, 1990, she was taken by
> Detective Robinson to the police station to look at pictures to attempt
> to identify the third assailant. When Robinson dropped Cofer off at
> her apartment, William Sweet was standing nearby and saw her leave
> the detective. Unknown to Cofer, Sweet had previously implicated
> himself in the robbery by telling a friend that he had committed the
> robbery or that he had ordered it done. Cofer asked her next-door
> neighbor, Mattie Bryant, to allow the neighbor's daughters, Felicia,
> thirteen, and Sharon, twelve, to stay with Cofer in her apartment that
> night. Mattie agreed, and the children went over to Cofer's apartment
> around 8 p.m.
>
> At approximately 1 a.m. that evening, Sharon was watching
> television in the living room of Cofer's apartment when she heard a
> loud kick on the apartment door. She reported this to Cofer, who was
> sleeping in the bedroom, but because the person had apparently left,
> Cofer told Sharon not to worry about it and went back to sleep.
> Shortly thereafter, Sharon saw someone pulling on the living room
> screen. She awakened Cofer. The two then went to the door of the
> apartment, looked out the peephole, and saw Sweet standing outside.
> Sweet called Cofer by name and ordered her to open the door.
>
> At Cofer's direction, Felicia pounded on the bathroom wall to
> get Mattie's attention in the apartment next door, and a few minutes
> later Mattie came over. The four then lined up at the door, with Cofer
> standing in the back of the group. When they opened the door to
> leave, Sweet got his foot in the door and forced his way into the
> apartment. Sweet's face was partially covered by a pair of pants. He
> first shot Cofer and then shot the other three people, killing Felicia.
> Six shots were fired. Cofer, Mattie, and Sharon were shot in the
> thigh, ankle and thigh, and buttock, respectively, and Felicia was shot
> in the hand and in the abdomen.

*Id.*

Following the jury's recommendation for death by a vote of ten to two, the trial court sentenced Sweet to death. *Id.* In imposing the death sentence, the trial court found the following aggravating factors:

> (1) Sweet had previously been convicted of several violent felonies, including armed robbery, possession of a firearm by a convicted felon, riot, resisting arrest with violence, and the contemporaneous attempted murders and burglary; (2) the murder was committed to avoid arrest; (3) the murder was committed during a burglary; and (4) the murder was cold, calculated, and premeditated.

*Id.* at 1142. "The court found no statutory mitigating circumstances, but found as nonstatutory mitigation that Sweet lacked true parental guidance as a teenager. This mitigation was given slight weight." *Id.*

On direct appeal, this Court affirmed Sweet's convictions and sentence of death. *Id.* at 1143. Sweet's sentence of death became final in 1994. *Sweet v. Florida*, 510 U.S. 1170 (1994).

**Sweet's Initial Postconviction Motion**

In 1995, Sweet filed his initial motion for postconviction relief, raising twenty-eight claims. *Sweet v. State* (*Sweet II*), 810 So. 2d 854, 857 n.4 (Fla. 2002).[2] The postconviction court granted an evidentiary hearing on four of Sweet's claims. *Id.* at 858.

---

2. Sweet's initial postconviction claims included:

(1) Sweet was denied access to public records; (2) the one-year time limitation for filing a rule 3.851 motion for postconviction relief

- 3 -

violate[d] Sweet's due process and equal protection rights; (3) the "felony murder" statutory aggravating circumstance constitute[d] an unconstitutional "automatic statutory aggravating circumstance"; (4) the "avoid arrest" statutory aggravator was inapplicable in this case and the jury was erroneously instructed regarding this aggravator because the trial court improperly failed to further instruct the jury that the aggravator can only be found where it is the "dominant or only" motive for the defendant's commission of the murder; (5) the trial court's jury instruction on the "cold, calculated, and premeditated" aggravator was erroneous because it failed to instruct the jury that this aggravator required "heightened premeditation" and the evidence failed to establish the necessary heightened premeditation necessary to support this aggravator; (6) the Jacksonville Sheriff's Office destroyed all of the evidence in this case, depriving Sweet of his right to conduct an independent analysis of this evidence using his own experts; (7) ineffective assistance during the guilt phase by: (a) failing to conduct an adequate pretrial investigation and preparation of Sweet's case; (b) failing to investigate other possible sources who would have had a motive to kill Marcine Cofer; and (c) failing to properly cross-examine Marcine Cofer and Solomon Hansbury; (8) ineffective assistance by failing to investigate and prepare available mitigation evidence regarding Sweet's background; (9) Sweet was denied his right to a fair trial as a result of his jury being subjected to improper influences; (10) the jury was given inadequate instructions on the "prior violent felony," "great risk," "avoiding arrest," and "cold, calculated, and premeditated" aggravators; (11) Rule Regulating the Florida Bar 4-3.5(d)(4), which prohibits attorneys from interviewing jurors, caused his postconviction counsel to render ineffective assistance of counsel; (12) Sweet is innocent of first-degree murder and innocent of the death penalty; (13) the record fail[ed] to show his presence or his counsel's presence at five sidebar conferences and counsel rendered ineffective assistance by failing to object; (14) improper prosecutorial comments during the penalty phase in arguing that the jury should not be sympathetic towards Sweet and ineffective assistance in failing to object to this comment and in failing to request a "mercy instruction"; (15) alleged omissions in the record on appeal deprived him of meaningful appellate and postconviction review and trial counsel rendered ineffective assistance in failing to ensure a complete record;

- 4 -

At the evidentiary hearing, Sweet presented the testimony of Anthony

McNish, a witness who was subpoenaed to testify at Sweet's trial, but did not

appear. *Id.* at 861. McNish's testimony at the evidentiary hearing was

summarized by this Court as follows:

(16) the trial court's failure to ensure that Sweet had a complete record on appeal deprived him of a proper direct appeal; (17) Sweet received a fundamentally unfair trial due to the sheer number and types of errors committed; (18) the penalty phase jury instructions improperly shifted the burden to Sweet to show that death was not the appropriate sentence for the jury to recommend; (19) the State's misleading evidence and improper argument deprived Sweet of a fair trial; (20) Sweet's contemporaneous felonies were improperly used to support the prior violent felony aggravator; (21) the State failed to prove that Sweet "knowingly" created a great risk of causing the death of other persons given that his mental state at the time of the murder prevented him from knowing this fact; (22) the trial court improperly used a prior possession of a firearm by a convicted felon conviction as a statutory aggravator because the conviction was unconstitutionally obtained; (23) Florida's death penalty statute is unconstitutional on its face and as applied; (24) the trial court erred in failing to consider nonstatutory mitigating circumstances; (25) the State's introduction of and argument regarding nonstatutory aggravators deprived Sweet of a fair sentencing recommendation; (26) the State's closing argument and the jury instructions during the penalty phase improperly diminished the jury's sense of responsibility in the sentencing process; (27) trial counsel failed to provide the two court-appointed mental health examiners with sufficient background information to allow them to adequately evaluate Sweet's competency to stand trial; and (28) the mental health officials that examined Sweet failed to render adequate mental health assistance.

*Id.* at 857 n.4.

> McNish stated that the three men at Cofer's door walked differently than Sweet, and that the three men each had a different skin complexion and physical build than Sweet. . . .
>
> The State established on cross-examination that McNish had been convicted of seven felonies, including crimes involving dishonesty. Further, although he stated at a pretrial deposition that he could not see any of the three mens' faces at Cofer's door, that it was dark, and that he had bad eyesight, he explained at the evidentiary hearing that, after thinking about it, he had a good idea of what the three men looked like. However, he repeated at the evidentiary hearing that he had bad eyesight and never got a good look at the three men. Moreover, McNish never saw any of the men wearing a mask, and he did not actually see the men knock on the door. Finally, McNish stated at the evidentiary hearing that he could identify one of the men that was at Cofer's door now, but he refused to reveal the name of the person. He did state that the man is not Sweet.

*Id.* at 861-62. Also at the evidentiary hearing on his initial postconviction motion, Sweet presented the testimony of Solomon Hansbury, a witness at Sweet's trial who testified "that Sweet confessed to the murder while they were in jail together." *Id.* at 867. At the evidentiary hearing, Hansbury recanted his testimony. *Id.*

After the evidentiary hearing, the postconviction court denied relief. *Id.* at 858. As to Sweet's claim regarding trial counsel's failure to secure McNish's appearance at trial, the postconviction court found that Sweet "failed to demonstrate either deficient performance or prejudice." *Id.* at 862. The postconviction court explained that "given McNish's inconsistent testimony at the evidentiary hearing and complete evasiveness regarding a critical piece of newly divulged evidence—some eight years after the fact, the jury would find McNish's testimony to be as incredible as this Court found it to be." *Id.* Additionally, as to

Hansbury's recantation, the postconviction court "expressly rejected Hansbury's testimony at the evidentiary hearing . . . as 'incredible.' " *Id.* at 867.

Sweet appealed the denial of postconviction relief to this Court. As to McNish, this Court agreed with the postconviction court that "Sweet demonstrated neither deficient performance nor prejudice with regard to McNish," and concluded that none of Sweet's claims of ineffective assistance of counsel at the guilt phase "refute[d] the overwhelming evidence of guilt presented by the State." *Id.* at 862. This Court, likewise, rejected Sweet's cumulative evidence claim concerning Hansbury's recantation after "[c]onsidering all of the testimony presented at the evidentiary hearing." *Id.* at 867. This Court denied Sweet's other claims and unanimously affirmed the postconviction court's denial of relief. *Id.* at 871.[3]

---

[3]. Sweet's subsequent petition for a writ of habeas corpus filed in this Court was also denied. *Sweet v. Moore*, 822 So. 2d 1269 (Fla. 2002).

Sweet filed a successive motion for postconviction relief in 2003, raising a claim under *Ring v. Arizona*, 536 U.S. 584 (2002), which the postconviction court denied as untimely and facially insufficient. This Court affirmed without opinion. *See Sweet v. State*, 900 So. 2d 555 (Fla. 2004).

Sweet filed a third successive motion for postconviction relief, raising a claim under *Crawford v. Washington*, 541 U.S. 36 (2004). The postconviction court denied the claim, and this Court affirmed without opinion. *Sweet v. State*, 934 So. 2d 450 (Fla. 2006). Sweet's petition for a writ of habeas corpus in federal court was dismissed as untimely. *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311 (11th Cir. 2006). Sweet's fourth and fifth successive motions for postconviction relief were also denied; Sweet did not appeal.

## Sweet's Sixth Successive Motion for Postconviction Relief

On January 25, 2017, Sweet filed his sixth successive motion for postconviction relief based on newly discovered evidence.[4] The newly discovered evidence was an affidavit executed by Florida state prisoner Eric L. Wilridge, who attested, in part:

> On June 26/27, 1990 around 1:30am I was at the laundromat on 4th Market. I was looking down the alley and saw 3 males standing at Dales (Spot). I got on my bike and rode around the corner towards 3rd and market. I ran into Jesse and he said that he relieved [sic] that somebody is gonna rob Dale (Marcene) cause a guy with a ski mask made him knock on their door. About 10 minutes later I rode past Dales (spot) down 3rd and saw a guy standing in the doorway shooting. I couldn't see who it was because he was wearing a ski mask (black/gray). I know it wasn't (William E. Sweet) because of his build, height, and complexion (shorter and lighter). The next morning, I heard a little girl got killed. I didn't come forward earlier because I didn't want to get involved, but an innocent man is on death row. This is what happened.

Sweet's motion also asserted that Cofer, who testified against Sweet at trial, had since come forward and suggested that she may have misidentified Sweet to the

---

4. While this case was pending, Sweet filed a seventh successive motion seeking relief under *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017). Sweet appealed the postconviction court's denial of that motion and, upon review, this Court affirmed. *Sweet v. State*, 234 So. 3d 646 (Fla. 2018).

police and at trial.[5]  Sweet argued that, because "[i]dentification has always been a key issue in this case," an evidentiary hearing was warranted.

The postconviction court granted Sweet an evidentiary hearing "to develop the factual allegations of [Sweet's] claim" regarding Wilridge and "to present additional evidence to support [Sweet's] claim that Ms. Cofer recanted her testimony for the limited purpose of demonstrating any cumulative effect the recantation may have" on Sweet's claim.  After the one-day evidentiary hearing, the postconviction court denied relief.

Sweet now appeals the postconviction court's denial of relief, claiming that the postconviction court (1) erred in admitting an arrest record, which indicated that Wilridge was arrested five days before Sweet's offenses; (2) erred in its credibility determinations regarding the testimony of Cofer and Wilridge; and (3) misapplied the *Jones*[6] standard for newly discovered evidence.  For the reasons explained below, we affirm the postconviction court's order denying relief.

---

5. In 2014, Sweet filed a successive pro se motion for postconviction relief, in which he alleged that Cofer recanted her trial testimony and an evidentiary hearing was warranted.  This motion was stricken because Sweet was represented at the time of the filing and his then-counsel did not adopt the motion.

6. *Jones v. State*, 709 So. 2d 512 (Fla. 1998).

# I. Admission of the Arrest Record

Sweet claims that the postconviction court erred in admitting an arrest record that was introduced by the State, which showed that Wilridge was arrested five days before the crimes at issue in this case occurred. The State sought to admit the arrest record to show that Wilridge was likely incarcerated at the time of the murder and thus could not have been an eyewitness to the crime. Sweet argues that the arrest record should not have been admitted because it was not timely disclosed to the defense and was not relevant, as it did not conclusively establish that Wilridge was in custody at the time the crimes at issue occurred.

We conclude that the postconviction court did not err in admitting the arrest record. Even if we were to conclude that it was error to admit the record, however, any error would be harmless beyond a reasonable doubt. *See Deparvine v. State*, 995 So. 2d 351, 372 (Fla. 2008) (holding that erroneously admitted evidence was harmless where there was "no reasonable possibility" that the evidence contributed to the defendant's convictions). The trial court's determination of Wilridge's credibility did not rest on the admission of the arrest record, as we more fully explain below.

Accordingly, Sweet is not entitled to relief on this claim.

- 10 -

## II. Credibility Determinations

"When reviewing a trial court's determination relating to the credibility of a recantation, this Court is 'highly deferential' to the trial court and will affirm the lower court's determination so long as it is supported by competent, substantial evidence." *Lambrix v. State*, 39 So. 3d 260, 272 (Fla. 2010) (quoting *Heath v. State*, 3 So. 3d 1017, 1024 (Fla. 2009)). "Postconviction courts hold a superior vantage point with respect to questions of fact, evidentiary weight, and observations of the demeanor and credibility of witnesses." *Ibar v. State*, 190 So. 3d 1012, 1018 (Fla. 2016). "Unlike this Court, 'the trial judge is there and . . . see[s] and hear[s] the witnesses presenting the conflicting testimony. The cold record on appeal does not give appellate judges that type of perspective.' " *Spann v. State*, 91 So. 3d 812, 816 (Fla. 2012) (quoting *State v. Spaziano*, 692 So. 2d 174, 178 (Fla. 1997)).

### 1. Cofer

Sweet claims that the postconviction court erred in finding that Cofer's recantation testimony was not credible. With regard to recanting testimony, this Court has explained:

> Recantation by a witness called on behalf of the prosecution does not necessarily entitle a defendant to a new trial. In determining whether a new trial is warranted due to recantation of a witness's testimony, a trial judge is to examine all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. "Moreover, recanting testimony is exceedingly unreliable, and it

- 11 -

is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." Only when it appears that, on a new trial, the witness's testimony will change to such an extent as to render probable a different verdict will a new trial be granted.

*Consalvo v. State*, 937 So. 2d 555, 561 (Fla. 2006) (citations omitted) (quoting *Armstrong v. State*, 642 So. 2d 730, 735 (Fla. 1994)). If a postconviction court "is not satisfied that the recanted testimony is true, *it has a duty to deny the defendant a new trial*." *Heath*, 3 So. 3d at 1024; *see also Archer v. State*, 934 So. 2d 1187, 1199 (Fla. 2006) (affirming denial of postconviction relief "because a recantation which is not credible would not produce an acquittal or a life sentence on retrial").

In this case, Cofer's testimony regarding her blurred present memory as to the shooter came twenty-six years after Sweet's trial. Additionally, and importantly, Cofer's testimony at the evidentiary hearing cannot be considered a true recantation, as she testified at the evidentiary hearing on cross-examination by the State that her trial testimony was truthful. However, as the postconviction court explained in its order denying relief, Cofer testified at the evidentiary hearing that "she was now unsure whether [Sweet] was the person who shot her." The postconviction court further explained:

> Ms. Cofer claimed that she had been unsure about [Sweet's] guilt for some time, but did not feel it was confirmed until her sister told her in 2013 that [Sweet] was innocent. Ms. Cofer also testified that shortly after speaking with her sister, she was contacted by [Sweet's] sister about recanting her trial testimony. Despite now testifying that [Sweet] was not the true perpetrator, she claimed that what she

- 12 -

testified to at the time of the trial was true. Ms. Cofer did not provide any specific details to explain how she went from being able to concretely identify [Sweet] as the perpetrator to now questioning her identification.

While Ms. Cofer's testimony was credible at trial, her testimony at the Evidentiary Hearing was not. Ms. Cofer testified that her memory "goes in and out" and is "blurry." She also testified that she smokes approximately fifteen marijuana blunts a day and that she had consumed five marijuana blunts prior to testifying at the Evidentiary Hearing. Ms. Cofer's demeanor at the Evidentiary Hearing suggested that she was on friendly terms with [Sweet] and had a vested interest in seeing [Sweet's] conviction overturned despite his culpability. Based on Ms. Cofer's testimony it is clear to the Court that with the passage of time and Ms. Cofer's drug use, her memory of the offenses has faded. Her fading memory was then influenced by statements made to her by her sister and [Sweet's] sister that [Sweet] was not the true perpetrator.

We conclude that this finding is supported by competent, substantial evidence.

Accordingly, Sweet is not entitled to relief on this claim.

## 2. Wilridge

Sweet next argues that the postconviction court erred in finding that Wilridge was not credible. Like the delay in Cofer's recantation, Wilridge did not come forward for more than twenty-four years after the offenses. *See Jones*, 709 So. 2d at 521-22 ("Where . . . some of the newly discovered evidence includes the testimony of individuals who claim to be witnesses to events that occurred at the time of the crime, the trial court may consider both the length of the delay and the reason the witness failed to come forward sooner."). Additionally, Wilridge is a seven-time convicted felon, who is currently serving a life sentence for which he

- 13 -

has been incarcerated since October 26, 1991. *See Clark v. State*, 35 So. 3d 880, 893 (Fla. 2010) (affirming the denial of postconviction relief where the newly discovered evidence came from an inmate serving multiple sentences, noting that the inmate "would probably not serve as a credible witness at a new trial").

Further, as the postconviction court explained in its order denying relief:

Mr. Wilridge's explanation for why he waited over twenty-four years to come forward with this possibly exonerative information was that he did not want to become involved with law enforcement. Mr. Wilridge claimed that his guilty conscious [sic], caused by knowing an innocent man was going to be executed, is what made him finally come forward. Then, a few months prior to the Evidentiary Hearing occurring, Mr. Wilridge had an abrupt change of heart. He wrote two letters, one to the Court and one to the State Attorney Office for the Fourth Judicial Circuit, in which he claimed his affidavit about [Sweet's] case was invalid and inaccurate. Further, in the letter to the Court, Mr. Wilridge even went so far as to specify that he did not remember anything from that night pertaining to [Sweet's] case.
      At the Evidentiary Hearing, Mr. Wilridge's inconsistency in what he observed concerning the offenses continued. In his affidavit, Mr. Wilridge stated that on the night of the offense he initially saw three men standing around Ms. Cofer's apartment, but at the Evidentiary Hearing he testified that while he saw three individuals, they were too far away for him to see any identifying features, including whether they were male or female. Mr. Wilridge also wrote in his affidavit that he saw a man standing in the doorway shooting into Ms. Cofer's apartment, but at the Evidentiary Hearing he testified that he saw a man standing in the doorway with his hand extended and did not see a gun or shots being fired. Mr. Wilridge further testified that it was only after riding away that he heard gunshots, which he claimed was common to hear in the neighborhood.

We conclude that this finding is supported by competent, substantial evidence.

Accordingly, Sweet is not entitled to relief on this claim.

- 14 -

### III. Newly Discovered Evidence

Lastly, Sweet claims that the postconviction court misapplied the *Jones* standard for newly discovered evidence. "When the trial court rules on a newly discovered evidence claim after an evidentiary hearing, we review the trial court's findings on questions of fact, the credibility of witnesses, and the weight of the evidence for competent, substantial evidence." *Green v. State*, 975 So. 2d 1090, 1100 (Fla. 2008). "As with rulings on other postconviction claims, we review the trial court's application of the law to the facts de novo." *Id.*

With regard to claims of newly discovered evidence, this Court has explained:

> To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements: First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. *See Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (*Jones II*). Newly discovered evidence satisfies the second prong of this test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." *Id.* at 526 (quoting *Jones v. State*, 678 So. 2d 309, 315 (Fla. 1996) (*Jones I*)). In determining whether the evidence compels a new trial, the trial court must "consider all newly discovered evidence which would be admissible," and must "evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial." *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991).

*Id.* at 1099.

After finding that Cofer and Wilridge were not credible, the postconviction court turned to consider the cumulative effect of all evidence that could be presented at a new trial. The court considered the additional evidence presented at the evidentiary hearing on Sweet's initial postconviction motion of McNish's testimony and Hansbury's recantation. After noting its previous findings that neither McNish's testimony nor Hansbury's recantation was credible, the postconviction court concluded that "[i]n light of all the evidence presented at the evidentiary hearing and all other evidence available," Wilridge's newly discovered evidence and Cofer's recantation "would not produce a reasonable probability of a different outcome at a new trial." Thus, it is clear that the postconviction court properly applied the *Jones* standard to Sweet's claim.

Accordingly, Sweet is not entitled to relief on this claim.

## CONCLUSION

For the reasons stated, we affirm the postconviction court's order denying Sweet's sixth successive motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Angela Cox, Judge - Case No. 161991CF002899AXXXMA

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, Mark S. Gruber, Julie A. Morley, and Margaret S. Russell, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, and Lisa A. Hopkins, Assistant Attorney General, Tallahassee, Florida

    for Appellee