# Supreme Court of Florida

_____

No. SC19-195
_____

**WILLIAM EARL SWEET,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

February 27, 2020

PER CURIAM.

William Earl Sweet challenges an order summarily denying his eighth

successive motion to vacate the judgment of conviction and sentence of death, filed

under Florida Rule of Criminal Procedure 3.851. Sweet also challenges an order

denying his motion to compel production of public records. We have jurisdiction.

*See* art. V, § 3(b)(1), Fla. Const.

## FACTS AND PROCEDURAL BACKGROUND

In the opinion on direct appeal, we summarized the facts of the incident

underlying Sweet's conviction and death sentence:

> On June 6, 1990, Marcine Cofer was attacked in her apartment
> and beaten and robbed by three men. She could identify two of the

men by their street names.  On June 26, 1990, she was taken by Detective Robinson to the police station to look at pictures to attempt to identify the third assailant.  When Robinson dropped Cofer off at her apartment, William Sweet was standing nearby and saw her leave the detective.  Unknown to Cofer, Sweet had previously implicated himself in the robbery by telling a friend that he had committed the robbery or that he had ordered it done.  Cofer asked her next-door neighbor, Mattie Bryant, to allow the neighbor's daughters, Felicia, thirteen, and Sharon, twelve, to stay with Cofer in her apartment that night.  Mattie agreed, and the children went over to Cofer's apartment around 8 p.m.

At approximately 1 a.m. that evening, Sharon was watching television in the living room of Cofer's apartment when she heard a loud kick on the apartment door.  She reported this to Cofer, who was sleeping in the bedroom, but because the person had apparently left, Cofer told Sharon not to worry about it and went back to sleep.  Shortly thereafter, Sharon saw someone pulling on the living room screen.  She awakened Cofer.  The two then went to the door of the apartment, looked out the peephole, and saw Sweet standing outside.  Sweet called Cofer by name and ordered her to open the door.

At Cofer's direction, Felicia pounded on the bathroom wall to get Mattie's attention in the apartment next door, and a few minutes later Mattie came over.  The four then lined up at the door, with Cofer standing in the back of the group.  When they opened the door to leave, Sweet got his foot in the door and forced his way into the apartment.  Sweet's face was partially covered by a pair of pants.  He first shot Cofer and then shot the other three people, killing Felicia.  Six shots were fired.  Cofer, Mattie, and Sharon were shot in the thigh, ankle and thigh, and buttock, respectively, and Felicia was shot in the hand and in the abdomen.

*Sweet v. State*, 624 So. 2d 1138, 1139 (Fla. 1993).

The jury found Sweet guilty of first-degree murder and recommended a sentence of death.  *Id.* at 1139.  After finding the existence of four statutory aggravating circumstances and one nonstatutory mitigating circumstance (which

- 2 -

was assigned slight weight), the trial court sentenced Sweet to death. *Id.* at 1142.

On direct appeal, we affirmed Sweet's conviction and death sentence. *Id.* at 1143.

In the twenty-five years following his direct appeal, Sweet filed numerous postconviction motions—the latest being his eighth successive motion to vacate the judgment of conviction and sentence. Along with his eighth successive motion, Sweet filed a motion to compel discovery documents from the Office of the State Attorney for the Fourth Judicial Circuit. The postconviction court summarily denied Sweet's eighth successive postconviction motion and denied his motion to compel.

In this appeal, Sweet challenges the postconviction court's order summarily denying his eighth successive motion to vacate the judgment of conviction and sentence. Sweet argues that he was entitled to an evidentiary hearing on a newly discovered evidence claim alleging spoliation of evidence and a *Brady*[1] violation, and that he was entitled to an evidentiary hearing on several claims alleging ineffective assistance of trial and postconviction counsel. Sweet further argues that the court erred in summarily denying a standalone actual innocence claim. Finally, Sweet challenges the denial of his motion to compel, arguing that he sufficiently alleged entitlement to the requested records. We address each of Sweet's arguments in turn, and for the reasons set forth below, we affirm.

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 (1963).

**SUMMARILY DENIED POSTCONVICTION CLAIMS**

Rule 3.851(f)(5)(B) provides that a circuit court may summarily deny a successive postconviction motion if "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." A summary denial of a postconviction claim is subject to de novo review. *Long v. State*, 183 So. 3d 342, 344 (Fla. 2016) (quoting *Hunter v. State*, 29 So. 3d 256, 261 (Fla. 2008)).

### I. Sweet's Spoliation of Evidence / *Brady* Violation Claim

Sweet argues that the postconviction court erred by summarily denying his newly discovered evidence claim alleging spoliation of evidence by the State and a *Brady* violation.

"*Brady* requires the State to disclose material information within its possession or control that is favorable to the defense." *Riechmann v. State*, 966 So. 2d 298, 307 (Fla. 2007). To establish a *Brady* violation, a defendant must show "(1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced." *Dailey v. State*, 283 So. 3d 782, 789 (Fla. 2019) (quoting *Taylor v. State*, 62 So. 3d 1101, 1114 (Fla. 2011)); *see also Turner v. United States*, 137 S. Ct. 1885, 1888 (2017) ("[T]he government violates the Constitution's Due Process Clause 'if it withholds evidence that is favorable to the

- 4 -

defense and *material* to the defendant's guilt or punishment.' ") (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)).

In assessing *Brady* materiality and ensuing prejudice, we "review the net effect of the suppressed evidence and determine 'whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *State v. Huggins*, 788 So. 2d 238, 243 (Fla. 2001) (quoting *Maharaj v. State*, 778 So. 2d 944, 953 (Fla. 2000)). Evidence that is "too little, too weak, or too distant from the main evidentiary points to meet *Brady*'s standards" is not material. *Turner*, 137 S. Ct. at 1894.

Here, Sweet's spoliation and *Brady* claims are based on jail records for Eric Wilridge, a purported witness to the murder. In 2017, when Sweet filed his sixth successive postconviction motion, he attached an affidavit signed by Wilridge. Wilridge swore he witnessed the shooting and could rule Sweet out as the shooter. *Sweet v. State*, 248 So. 3d 1060, 1065 (Fla. 2018). The State produced Wilridge's arrest and booking reports to show that Wilridge was incarcerated when he supposedly witnessed the murder. The postconviction court found that Wilridge was not a credible witness and this Court affirmed. *Id.*

Now, in his instant eighth successive postconviction motion, Sweet alleges that his collateral counsel recently obtained copies of Wilridge's arrest and booking reports from the Jacksonville Sheriff's Office (JSO) and the Duval County

- 5 -

Public Records Database (CORE), in hopes of proving that Wilridge was not incarcerated and therefore could have seen the shooting. According to Sweet, the reports obtained from CORE and JSO differ in certain respects from the supposedly same documents that were previously produced by the State during discovery for Sweet's sixth successive postconviction claim. Sweet argues:

> Since the documents produced by the State, which were admitted into evidence based on the business records exception to the hearsay rule, markedly differ from what is available in CORE and what was produced by [JSO], there was a grave possibility of a *Brady* violation, spoliation of evidence, and withholding evidence favorable to Mr. Sweet.

We hold that the postconviction court did not err in summarily denying this claim. Even assuming Sweet sufficiently alleged evidence that was favorable to the defense and suppressed by the State, he failed to describe evidence that is material to his guilt or punishment. In previous postconviction proceedings, Sweet argued that the trial court erred in admitting Wilridge's arrest report and in finding that Wilridge was not a credible witness. *Sweet*, 248 So. 3d at 1065. In affirming the denial of relief as to these arguments, we noted that "[t]he trial court's determination of Wilridge's credibility did not rest on the admission of the arrest record," *id.* at 1066, but on the fact that Wilridge kept changing his story about what he supposedly saw. *Id.* at 1067-68.[2]

---

2. Wilridge swore in his affidavit that he saw a man in a black/gray ski mask shooting into the residence, but Wilridge then wrote letters to the court and to the

As the determination of Wilridge's credibility was based on inconsistencies in his accounts, not on whether he was incarcerated, any discrepancy in Wilridge's jail records is simply too little and too weak to be material under *Brady* standards. *See Huggins*, 788 So. 2d at 243. Likewise, as the admission or exclusion of Wilridge's jail records would not even affect the finding as to that one witness's credibility, the purported evidence cannot reasonably be taken to put Sweet's whole case in such a different light as to undermine confidence in the verdict. *See id.* at 243. Accordingly, we hold that Sweet's *Brady* allegations are meritless and therefore affirm the summary denial of his *Brady* claim.

As to Sweet's spoliation of evidence allegations, the effect of the State's failure to satisfy its discovery obligations "is [the same that applies to a *Brady* violation, namely] whether there is a reasonable probability that 'had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Jimenez v. State*, 265 So. 3d 462, 479 (Fla. 2018) (alteration in original) (quoting *Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990)). Because the test for prejudice resulting from discovery violations is the same test as for *Brady*

State Attorney's Office denying the truth of his affidavit and insisting he did not remember anything about the incident. Then, at the evidentiary hearing, Wilridge gave a third story, stating he saw people at the location but could not make out any identifying features or even tell if the people were male or female; he also swore that he did not see a gun and only heard gunshots after leaving.

violations, we affirm the summary denial of Sweet's spoliation claim for the same reason we affirm the denial of his *Brady* claim.

## II.    Sweet's Ineffective Assistance of Counsel Claims

Sweet argues that he was entitled to an evidentiary hearing on his ineffective assistance of postconviction counsel claims.  Sweet alleges that his postconviction counsel provided ineffective assistance by failing to file a claim alleging that trial counsel was ineffective as a result of inexperience and severe alcoholism.  Sweet alleges that postconviction counsel failed to discover notes that revealed trial counsel's incompetence.  Sweet further alleges that postconviction counsel failed to file a *Giglio*[3] claim Sweet allegedly paid to have investigated, regarding purportedly false trial testimony given by witness Solomon Hansbury.

However, "we have 'repeatedly held that claims of ineffective assistance of postconviction counsel are not cognizable.' " *Banks v. State*, 150 So. 3d 797, 800 (Fla. 2014) (quoting *Howell v. State*, 109 So. 3d 763, 774 (Fla. 2013)); *see also State ex rel. Butterworth v. Kenny*, 714 So. 2d 404, 407 (Fla. 1998) ("[D]efendants have no constitutional right to representation in postconviction relief proceedings.") *receded from on other grounds by Darling v. State*, 45 So. 3d 444, 453 (Fla. 2010).  Because ineffective assistance of postconviction counsel is not a

---

3.  *Giglio v. United States*, 405 U.S. 150 (1972).

viable basis for relief under rule 3.851, we affirm the summary denial of Sweet's ineffective assistance of postconviction counsel claims.

Moreover, to the extent Sweet's eighth successive postconviction motion alleges an independent claim of ineffective of *trial* counsel based on trial counsel's alcoholism and inadequate preparation, such a claim is untimely. "Any motion to vacate judgment of conviction and sentence of death shall be filed by the defendant within 1 year after the judgment and sentence become final." Fla. R. Crim P. 3.851(d)(1). Rule 3.851(d)(2) provides certain exceptions to the one-year deadline; for example, an untimely motion will be considered timely if "postconviction counsel, through neglect, failed to file the motion." Fla. R. Crim. P. 3.851(d)(2)(C).

Sweet admits that his ineffective assistance of trial counsel claim was filed many years after his judgment and sentence became final, but he argues that postconviction counsel's failure to file the claim renders it timely. Sweet reads subsection (d)(2)(C) too broadly. Subsection (d)(2)(C) creates an exception to the one-year deadline for circumstances where counsel's neglect results in a postconviction *motion* not being filed within a year of final judgment; the rule does not contemplate failure to raise specific *claims* within a year. *See Howell v. State*, 145 So. 3d 774, 775 (Fla. 2013) ("[U]nder Howell's interpretation, a condemned inmate would never face any time limitation in which to file a motion for

- 9 -

postconviction relief, because the inmate could always assert that postconviction counsel neglected to raise a claim.").

Sweet's postconviction counsel did file a motion to vacate Sweet's judgment of conviction and sentence within a year of the date his judgment became final. Counsel's failure to include this ineffective assistance of trial counsel claim in the original postconviction motion does not make the new claim forever timely. Because Sweet failed to allege a valid exception to the one-year deadline for his otherwise untimely claim, we hold that Sweet was not entitled to an evidentiary hearing on his claim of ineffective assistance of trial counsel (to the extent his motion includes such a claim).

### III. Sweet's Actual Innocence Claim

The next issue is whether Sweet's assertion of actual innocence states a basis for postconviction relief. We hold that it does not, for Florida does not recognize an independent claim of actual innocence in postconviction proceedings. *Elledge v. State*, 911 So. 2d 57, 78 (Fla. 2005) ("Elledge's contention that he is innocent of the death penalty was decided adversely to Elledge on direct appeal and is not cognizable in the postconviction proceeding"). We have also held that Florida's refusal to recognize postconviction actual innocence claims does not violate the Eighth Amendment. *Tompkins v. State*, 994 So. 2d 1072, 1088-89 (Fla. 2008).

Because actual innocence is not a cognizable basis for postconviction relief, we affirm the summary denial of this claim.

## MOTION TO COMPEL RECORDS

In addition to challenging the summary denial of his eighth successive postconviction motion, Sweet argues that the postconviction court abused its discretion by denying a motion asking the court to compel the Office of the State Attorney to produce a former assistant state attorney's "secret garage files." We affirm the denial of Sweet's motion to compel.

> A circuit court may order the production of public records under Florida Rule of Criminal Procedure 3.852(i) only upon finding that:
>
> (A)      collateral counsel has made a timely and diligent search of the records repository;
>
> (B)      collateral counsel's affidavit identifies with specificity those additional public records that are not at the records repository;
>
> (C)      the additional public records sought are either relevant to the subject matter of a proceeding under rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence; and
>
> (D)      the additional records request is not overly broad or unduly burdensome.

*Chavez v. State*, 132 So. 3d 826, 829 (Fla. 2014) (quoting Fla. R. Crim. P. 3.852(i)(2)). We review denials of rule 3.852(i) public records requests under the abuse of discretion standard. *Id.*

Sweet alleges that his collateral counsel recently read an article published on Jacksonville.com about former Assistant State Attorney Bernie de la Rionda. The article purportedly made a reference to 30 boxes of case notes stacked in de la Rionda's garage from his 35-year legal career. Sweet's motion to compel asked the postconviction court to order the State Attorney's Office to produce every document, file, and case note stored in de la Rionda's garage.

Notably, de la Rionda did not prosecute Sweet's case. Yet Sweet insists that his request was reasonably calculated to lead to the discovery of admissible evidence because de la Rionda once prosecuted Solomon Hansbury, one of the *witnesses* in Sweet's case. Sweet's eighth successive postconviction motion alleges that Hansbury gave perjured testimony against Sweet in exchange for a reduced sentence, and Sweet's motion to compel argues that de la Rionda may have kept notes discussing Hansbury's decision to give false testimony.

We hold that the postconviction court did not abuse its discretion in denying Sweet's motion to compel. First, Sweet's request for decades of voluminous notes regarding scores of criminal cases was overly broad. A request for a garage full of notes in hopes of finding any mention of a witness fabricating testimony is a textbook example of a fishing expedition. *See Dailey*, 283 So. 3d at 792 (holding that rule 3.852(i) is "not intended to be a procedure authorizing a fishing expedition for records") (quoting *Bowles v. State*, 276 So. 3d 791,795 (Fla. 2019)).

- 12 -

Moreover, Sweet failed to establish that his request was reasonably calculated to lead to the discovery of admissible evidence in support of his postconviction claims. Sweet attached to his eighth successive postconviction motion an affidavit signed by an investigator named Tom Wildes; in that affidavit, Wildes swore that he had asked Hansbury who gave him information about Sweet's case. Wildes swore that Hansbury told him it was *not de la Rionda* who discussed Sweet's case, as Hansbury would have recognized de la Rionda from his own prosecution. Considering de la Rionda did not prosecute Sweet's case and was not the person who purportedly discussed Sweet's case with the witness in question, it is not reasonably likely that de la Rionda's case notes would lead to the discovery of admissible evidence for Sweet's postconviction claim.

Because Sweet failed to show that his records request was not overly broad and that it was reasonably calculated to lead to the discovery of admissible evidence, we affirm the postconviction court's order denying Sweet's motion to compel.

## CONCLUSION

All of Sweet's postconviction claims are legally insufficient or based on allegations that are conclusively refuted by the record. We therefore affirm the postconviction court's order summarily denying relief. We also affirm the order

- 13 -

denying Sweet's motion to compel, for Sweet failed to demonstrate his entitlement to the requested records.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Angela M. Cox, Judge - Case No. 161991CF002899AXXXMA

Eric C. Pinkard, Capital Collateral Regional Counsel, Margaret S. Russell and Julie A. Morley, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Ashley Moody, Attorney General, and Lisa A. Hopkins, Assistant Attorney General, Tallahassee, Florida,

    for Appellee